# WALTHALL vs. GOREE.

[EJECTMENT BY WIFE'S HEIR, AGAINST HUSBAND'S ADMINISTRATOR.]

1. *Devise to husband and wife.*—At common law, under a devise to husband and wife during coverture, the entire estate vested in both of them as one person, and, on the death of either, continued in the survivor; but, under the statutes of this State creating and regulating the separate estates of married women, (Code, §§ 1981-97,)

such a devise creates the same estate in the parties as if it had been made before coverture; on the death of the wife intestate, her undivided moiety descends to her heirs-at-law, subject to the statutory rights of her surviving husband during his life; and on the subsequent death of the husband, the wife's heirs become entitled to the possession of her undivided moiety.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. A. A. COLEMAN.

THIS action was brought by Caroline N. Goree, an infant suing by her next friend, against Leonidas N. Walthall, to recover the possession of a certain tract of land, which was particularly described in the complaint. The plaintiff was the sole child and heir-at-law of Mrs. Caroline M. Goree, deceased, who, at the time of her death, was the wife of Robert T. Goree; while the defendant held the possession of the land as the administrator of said Robert T. Goree. Mrs. Goree was the daughter of John Nelson, who died on the 6th March, 1855, and whose last will and testament contained a devise of the land here in controversy, in these words: "I will and devise to my daughter Caroline and her husband, Robert T. Goree, all that certain body of land," &c., describing it. This will was properly attested to pass real estate, and was duly admitted to probate. Mr. and Mrs. Goree were married on the 10th November, 1852. Mrs. Goree died, intestate, on the 31st October, 1856; and Mr. Goree died, also intestate, in January, 1858. The cause was tried on an agreed statement of facts, with the understanding that the decision of the court should be embodied in the form of a charge to the jury, with leave to either party to reserve a bill of exceptions, and to take an appeal. "Upon the foregoing facts, the parties submitted to the court the following questions: whether, on the death of Mrs. Caroline M. Goree, the entire estate in the lands in dispute survived and belonged to said Robert T. Goree solely, in fee; or whether the same, or any part thereof, descended to the plaintiff, as heir-at-law of said Caroline M. Goree, either at the time of her death, or at the death of the said Rob-

ert T. Goree. The court thereupon charged the jury, that said Caroline M. and Robert T. Goree were each seized of a moiety in said lands; that on the death of the said Caroline M., the entire estate in said lands did not survive and belong solely to said Robert T. Goree in fee, but only one-half thereof, while the other half descended to the plaintiff, as heir-at-law of said Caroline M.; and that the plaintiff is entitled to recover one-half of said lands." The charge of the court is assigned as error.

BROOKS & GARROTT, for appellant.—At common law, under a devise or deed to husband and wife jointly, during coverture, they did not take separate estates, and were not seized by moieties; but each was seized of the entirety, and the survivor took the entire estate. — Cruise on Real Property, vol. 1, pp. 363–65; 2 Bla. Com. 144; 2 Kent's Com. 132; 1 Co. Litt. § 285; 2 Jarman on Wills, 114; Morley v. Whiteman, 2 Dev. & Bat. 537; Needham v. Ransom, 5 Ired. 426; Den v. Hardenburgh, 5 Hals. 42; Jackson v. Stevens, 16 Johns. 110; Jackson v. McConnell, 19 Wend. 175; Harding v. Springer, 2 Shep. (Me.) 407; Brownson v. Hull, 16 Vermont, 309; Fairchild v. Chastelleaur, 1 Penn. St. R. 176; Stuckey v. Keefe's Executor, 26 ib. 397; Taul v. Campbell, 7 Yerger, 319; Ames v. Norman, 4 Sneed, 684; Gibson v. Zimmerman, 12 Miss. 385; Shaw v. Hearsey, 5 Mass. 531; Rogers v. Grider, 1 Dana, 242; Thornton v. Thornton, 3 Randolph, 179. But this principle was not founded on the incapacity of the wife to take by moieties with her husband. It depended on the words of the conveyance, and was confined to cases in which, if the grantees had not been husband and wife, the instrument would have created a joint tenancy between them.—Attorney-General v. Bacchus, 9 Price, 30; S. C., 11 Price, 547; Paine v. Wagner, 12 Sim. 157; 1 Ver. 233; 3 Y. & J. 531; 4 Dane's Abr. 770; Preston on Est., vol. 1, p. 132; 4 Kent's Com. 402.

Section 1312 of the Code, abolishing the right of survivorship between joint tenants, has no application to the case. Husband and wife, under a conveyance to them jointly during coverture, are not joint tenants, though sometimes

inaccurately so called. Joint tenants are seized, in technical language, *per my et per tout ;* husband and wife, *per tout* only. Joint tenants may have a severance, or partition; but husband and wife cannot.—2 Bla. Com. 354; 3 Coke, 5; 9 *ib.* 140; 2 Vernon, 120; Roper on H. and W. 51; Prec. Ch. 1.

The provisions of the Code, relating to the separate estates of married women, do not affect the construction of this devise. The object of these provisions was to exclude the husband and his creditors from all right to property to which the wife might become entitled during coverture, where the husband, *jure uxoris,* by the operation of the common law, would become interested in, or entitled to it; and all such property is declared to be the separate estate of the wife, and not to be liable for the payment of the husband's debts. If a separate estate is created in the wife by will or deed, the statute has no application, as this court has frequently decided; nor does it apply in any case, where its application would at all conflict with any of the provisions of the will or deed. Wherever the statute applies, all the statutory incidents attach to the property; and where any of these incidents conflict with the provisions of the deed or will, the statute does not apply. The statute cannot have the effect of enlarging the wife's estate, or changing its character. If an estate for life is granted or devised to her, the statute cannot enlarge it into an estate in fee. If a conditional estate is granted or devised to her, the statute cannot make it absolute and unqualified. How, then, under a devise which, independent of the statute, would create in the wife an estate for life, subject to be enlarged into an absolute estate in fee simple in the event of her surviving her husband, can the statute convert her interest into an absolute and unconditional estate in fee simple in one-half of the land? The interest which the husband takes under the devise, is derived from the will—from the act of the testator—and cannot be affected by the statute. He takes nothing as trustee of his wife, nor would a decree of divorce, in favor of the wife, deprive him of the right to receive the rents and profits of the entire property.

In Tennessee, a statute similar to ours has been held not to apply to devises to husband and wife jointly. Ames v. Norman, 4 Sneed, 682.

J. D. WEBB, *contra.*—At common law, under the devise in this case, husband and wife would take as one person, with right of survivorship as an incident.—1 Chitty's Blackstone, book 2, p. 147; 2 Kent's Com. 132; 19 Wendell, 175; U. S. Digest, vol. 14 p. 345, §79; Hill on Trusts, 606, 630, 641. In Alabama, the right of survivorship is abolished by section 1312 of the Code. —2 Ohio, 305; 13 Ohio, 68; 11 Conn. 337. Independently of that statute, the other provisions of our system, in reference to the separate estates of married women, entirely abolish the rule of the common law above cited. These statutes are equally applicable to all property acquired by the wife during coverture, whether by descent, gift, or devise; in severalty, or jointly with another; in fee simple, or for life. By virtue of these statutes, the interest of the wife under the devise, whatever it may have been, became a part of her separate estate, and, on her death intestate, descended to her heirs-at-law.

R. W. WALKER, J.—According to the common law, a conveyance to husband and wife stands upon a footing, and has an effect, entirely different from a conveyance in the same words to any other two individuals. Under a conveyance to husband and wife during the coverture, they take neither as joint tenants, nor as tenants in common, but their interest is denominated a tenancy by entireties. They do not take by moieties—the whole estate vests in both of them as one person; each is seized of the entirety, *per tout*, not *per my;* and on the death of either, the entire estate continues in the survivor.—1 Cruise's Real Prop. 363–5, §§ 44–5–6–7, &c.; 2 Coke's Litt. (Butler & Hargrave's ed.) 187,(b); Jackson v. Stevens, 16 Johns. 110; Jackson v. McConnell, 19 Wend. 179; Thornton v. Thornton, 3 Rand. 179; Stuckey v. Keefe, 26 Penn. St. R. 397; Rogers v. Henderson, 5 Johns. Ch. 437; Sutliff v. Forgey, 1 Cow. 95; Pollard v. Merrill, 15 Ala. 174;

2 Kent, 132; 4 *ib.* 362; Williams on Real Prop. 208, and other authorities on brief of appellee.

A conveyance or devise to husband and wife, during coverture, must have the same effect with us as at common law, unless we have by legislation abolished the principle or reason of the common law, on which the rule above stated is founded.

The reason why, under a conveyance to husband and wife, they did not take either as joint tenants or tenants in common, is, that they were, according to the principles of the common law, incapable of so taking. The rule adverted to was not merely a rule fixing the construction of certain words in a deed or devise, when applied to husband and wife; for the result was the same, although the instrument expressly declared that the devisees or grantees should take as joint tenants, or tenants in common. The foundation of the rule is to be sought for in the rights and incapacities which, according to the common law, result from the matrimonial union. Under that system of jurisprudence, the husband and wife, though two natural persons, are but one person in law. Bracton says: "*Vir et uxor sunt quasi unica persona, quia caro una, et sanguis unus.*" The husband is quaintly described as "the head of the wife,"—the legal existence of the latter being as it were merged in that of the former. Being but one person, there can be no moieties between them; and they cannot, during the coverture, and under a conveyance to both, take separate estates in the same property. It is an obvious result of this unity of persons, that a conveyance to husband and wife is considered as a conveyance to a single person, under which they take but one estate, as a corporation; and the estate continues in the survivor, the same as if one of the corporators were to die. Because there can be no moieties between them, it is impossible for them to take, either as joint tenants, or as tenants in common; one characteristic of both these tenancies being, that the parties are seized by moieties. The distinction is, that joint tenants are seized *per my et per tout*, while tenants in common are seized *per my*, but not *per tout*.

The authorities fully sustain this statement of the reasons on which the common-law rule, prescribing the effect of a conveyance to husband and wife, is founded. Littleton, after stating the rule, says, that "the cause is, for that the husband and wife are one person in law."—2 Co. Litt. 187, (a). Blackstone says, that "husband and wife being considered as one person, they cannot take the estate by moieties, but both are seized of the entirety." 2 Blacks. Comm. 182. Chancellor Kent says: "They are not properly joint tenants, nor tenants in common; for they are but one person in law, and cannot take by moieties." "This species of tenancy arises from the unity of husband and wife."—2 Kent, 132. So with the adjudged cases: they all proceed, not on any supposed intention of the parties to the conveyance, but on the sole ground of the incapacity of husband and wife, who are regarded as one person in law, to take "during coverture separate estates in property which is conveyed to both of them."—Green v. King, 2 Black. R. 1211; Jackson v. Stevens, 16 Johns. 115; Ames v. Norman, 4 Sneed, 692; Barber v. Harris 15 Wend. 617; Stuckey v. Keefe, 26 Penn. St. R. 397; Rogers v. Henderson, 5 Johns. Ch. 437; Pollard v. Merrill, 15 Ala. 174; 4 Kent, 362; 1 Greenl. Cr. 363, §§ 44–5; 1 Thomas' Coke, note on p. 741; Bell on Property of H. & W. 396; Bredon's case, 1 Coke's R. 193, note to Thomas & Fraser's edit. In accordance with this view it has been held, and upon reasoning entirely conclusive, that husband and wife cannot, by any words in a grant to them during coverture, be made either joint tenants, or tenants in common.—Stuckey v. Keefe, 26 Penn. State R. 397; Johnston v. Hart, 6 W. & S. 319; Dias & Burn v. Glover, 1 Hoff. Ch. R. 71.

This exposition of the reasons on which the rule is founded, derives confirmation from another well settled principle of the common law—namely, that where an estate is conveyed to a man and a woman, who after the conveyance intermarry, as they originally took by moieties, so they will continue to hold by moieties after marriage.—Coke's Litt. 187, (b); 1 Greenl. Cr. 365, § 50; Stuckey v. Keefe, 26 Penn. St. 403; Ames v. Norman,

4 Sneed, 696; 4 Kent, 363. The reason of the distinction, between the effect of a conveyance to husband and wife before marriage, and one after, is found in the fact, that in the former case, the grantees are two legal persons, and as such capable of taking separate estates in the same property; whereas, in the latter case, the grantees together constitute a single person, and the estate is, therefore, conveyed and taken as an entirety, and not by moieties. Authorities *supra.*

It thus appears, that a grant to husband and wife would create a joint estate, but for the common-law principle, that by the coverture the legal existence of the wife is so completely incorporated into that of her husband, that she forms with him but one person, and is placed under an absolute incapacity to take by moieties with him, or to receive interests separate from his, in an estate conveyed to them during coverture.

'Article 3, chapter 1, title 5, part 2 of the Code, relates expressly to separate estates of married women.—Code, p. 380. The seventeen sections which compose that article, embody the principles of a new policy in reference to married women, which was unknown to the common law.'' Smith v. Smith, 30 Ala. 643. One of the principles embodied in the provisions of the Code here referred to is, that the distinct existence of the wife as a legal person is so far recognized as to enable her to take an estate separate from the husband.—Code, §§ 1982–3, &c. By this legislation, the one legal person of the common law has been resolved into two distinct persons, so far at least as the capacity of taking separate estates is concerned. Since the Code, therefore, a devise to husband and wife is not a *grant* to a single person, but to two persons, each of whom is capable of taking a separate estate. Both of the grantees being capable of taking separately, it is impossible that they should take by entireties, as if they constituted a single person. Of necessity, they take by moieties. Being thus invested with the capacity of taking by moieties, the reason on which the rule of the common law was founded has ceased to exist; and a devise to husband and wife must stand upon the same footing, and create

the same estate, as if it had been made before coverture, to parties who afterwards intermarried.—4 Kent, 363.

Mr. Goree did not become entitled, as surviving joint tenant, to the whole estate; for, by our statute, the *jus accrescendi* in joint tenancies is abolished, and the interest of a joint tenant, dying before severance, descends and vests as if it had been severed and ascertained.—Code, §1312.

In fact, although, since the Code, when land is granted to husband and wife, they take by moieties; yet they do not hold to each other, in all respects, the relation either of joint tenants, or tenants in common. For, although the Code has so far invested the wife with the rights of a legal person, as to enable her to take by moieties with her husband, it has by no means abrogated all, or even most, of the common-law disabilities of coverture. Husband and wife are still incapable of suing, or of contracting with each other; and though the wife may take a separate estate, she cannot convey it, without her husband's concurrence. It is obvious, therefore, that the ordinary incidents of joint tenancy and tenancy in common cannot attach to an estate held by husband and wife. They cannot release to each other, nor make partition by contract, nor compel it by writ of partition. The wife cannot convey her share without her husband's concurrence, nor can common-law actions of partition, or waste, or account, or ejectment, be maintained by one against the other. They do, however, take and are seized by moieties, and the wife's moiety is her separate estate under the Code.

Our conclusion is, that under this devise in the will of her father, Mrs. Goree took an undivided moiety in the land, as her separate estate under the Code; that the same vested in her husband as her trustee; that on her dying intestate, leaving a husband living, her estate in the land descended to her daughter, as her sole heir, subject to the statutory right of Mr. Goree, as husband, to have the use of the property during his life; and that at his death, the daughter became entitled to the possession.—Code, §§ 1982–3, 1990.

Judgment affirmed.

# INDEX.

## ACCOUNT.

1. *Bill of particulars ; sufficiency of, and admissibility of evidence under.*—In an action on an account for work and labor done, plaintiff's bill of particulars (Code, § 2233) containing an item for "work done on granary;" and the evidence showing that the granary had a shed on each side, one of which contained a threshing-machine, "the machinery consisting of a shaft and cog-wheels to move it, which were made fast to the building, like the running-gear of a gin," and which were put up by plaintiff at the same time with the granary,—*held*, that under the liberal rules which govern the construction of bills of particulars, and in the absence of a special showing that the evidence operated a surprise, there was no error in the admission of evidence showing the work performed by plaintiff in putting up said machinery, and the value thereof.—Robinson's Adm'rs v. Allison .................................................................................. 525

2. *Presumption as to settlement of accounts on execution of note.*—On settlement of accounts between a debtor and his creditor, a note being given for the ascertained balance, an order, previously given by the creditor to a third person, if then accepted or paid, is presumed to have entered into the settlement.—Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid ............... ..... 703

## ACTION.

1. *When action lies for money had and received.*—If the defendant has wrongfully sold the plaintiff's property, and received for it money, or something else as money, the plaintiff may waive the tort, and maintain assumpsit for the money ; but this principle does not apply where the defendant has simply exchanged the property, and has not sold or otherwise disposed of the property obtained in exchange.—Fuller v. Duren.................... 73

ACTION—CONTINUED.

2. *Same.*—If a corporation lends money, without authority under its charter, and takes a promissory note to secure the repayment, it cannot recover under the common money counts. Grand Lodge of Ala. v. Waddill........................................ 313

3. *Same.*—When a debtor transfers and endorses to his creditor, as collateral security, a note on a third person, and afterwards pays his original debt in full, he may maintain an action at law against the creditor, to recover money collected on the transferred note before the payment of the original debt.—Overstreet v. Nunn's Executors................................................ 666

4. *When action lies between joint tenants.*—Where there has been no actual ouster, one joint tenant of land cannot maintain an action of trespass against his co-tenant.—Bishop v. Blair........ 80

5. *When civil action lies against magistrate.*—If a municipal magistrate erroneously determines, on the evidence adduced before him in a particular case, that a slave is a free person of color, and therefore inflicts on him the punishment ordained exclusively for free persons of color, he is not liable to a civil action at the suit of the slave's master; *secus*, if, after correctly determining the *status* of the slave, he inflicts on him the punishment provided exclusively for free persons of color.—Withers v. Coyles............................................................. 320

6. *When action lies against county.*—Under the provisions of the Code, (§ 1203,) an action lies against a county, to recover damages sustained from the fall of a bridge after the expiration of the period covered by the builder's guaranty, although no toll was charged at the bridge.—Barbour County v. Brunson........ 362

7. *Same.*—Under the provisions of the Code, (§§ 763, 775, 2141,) an action does not lie against a county, on a claim which has been allowed by the commissioners' court.—Marshall County v. Jackson County......................................................... 613

8. *When action lies to recover money lost on horse-race.*—An action lies for the use of the wife, to recover money bet and lost by her husband on a horse-race, (Code, § 1563,) notwithstanding the fact that her husband's interest in the wager was purposely concealed from the defendant, because of his known unwillingness to make a bet with the husband, or on a race in which the latter was interested.—Davis v. Orme............................... 540

ADVERSE POSSESSION.

1. *By purchaser, under color of title.*—If a purchaser enters into the possession of land under a vendor's bond, conditioned to make titles when the purchase-money is paid, he cannot, so long as the purchase-money remains unpaid, set up adverse possession against the vendor under color of title; but, after the purchase-money has been paid in compliance with the terms of the contract, such a bond is color of title, and subsequent possession

ADVERSE POSSESSION—continued.

under it for a sufficient length of time will bar the legal title. McQueen v. Ivey......................................................... 308

2. *Effect of.*—The validity of a conveyance, *inter partes*, not being affected by the fact that the property was adversely held at the time of the execution of the instrument, such adverse possession constitutes no objection to the reformation of the instrument.—Thompson v. Marshall........................................... 504

AGENCY.

1. *Proof of agency.*—If a mother makes a contract in the presence of her unmarried daughter, and without objection on her part, for the hiring of a slave belonging to the daughter, this is sufficient, if unexplained by other evidence, to raise a legal presumption of the mother's authority to make the contract as agent of her daughter.—Howard v. Coleman.................... 721

2. *Same.*— It having been proved that the husband was absent from the place of his residence during the greater part of the time while a hired slave was sick at his house, and, when not absent from the place, was at home only at night; and that his wife had the management and nursing of the slave throughout his sickness,—this is sufficient proof of the wife's authority to act as agent of the husband, in reference to the slave, to authorize her to send a message to the owner, informing him of the slave's sickness, and requesting him, in accordance with the terms of the contract of hiring, to call in a physician............................................................... 721

3. *Liability of master for willful act of servant.*—The owners of a steamboat are not liable for damages resulting from a collision caused by the willful act of their servants and agents in charge of the boat.—Cox, Brainard & Co. v. Keahey....................... 340

ALIMONY.

See Divorce.

AMENDMENT.

1. *Of notice in summary proceeding.*—A defendant in a summary proceeding, having been brought into court by the service of a legal notice, cannot object on error to the allowance of an improper amendment of the notice, unless he reserved the point by bill of exceptions at the time of the allowance of the amendment.—Simmons v. Varnum............................................. 92

2. *Of bill in chancery.*—A mere inconsistency, or repugnancy, between the allegations of the original and amended bills, does not render the allowance of the amendment improper; there must be an inconsistency, or repugnancy, in the purposes of the bill, as contradistinguished from a modification of the relief sought.—Cain v. Gimon................................................ 168

AMENDMENT—CONTINUED.

3. *Same.*—So far as the equity of the bill is concerned, an amendment takes effect as of the date of the original bill............... 168

4. *Of judgment nunc pro tunc pending appeal.*—When a judgment is amended *nunc pro tunc* during the pendency of an appeal, and the amendment brought up on *certiorari* previously sued out, the amended judgment is properly before the appellate court —Dow v. Whitman & Ousley.................... .... 604

ARBITRATION.

1. *Distinction between statutory and common-law arbitrations; oath of arbitrators.*—The fact that the matters submitted to arbitration were at the time involved in pending suits, is not sufficient to show that the submission is under the statute, (Code, §§ 2709-10,) when the stipulations of the parties, and the proceedings of the arbitrators, are both at variance with the provisions of the statute; and when the arbitration is not under the statute, there is no rule of law requiring the arbitrators to be sworn—Willingham v. Harrell......................... 583

2. *Return of award to court.*—When the arbitration is not under the statute, and there is no agreement that the award shall be returned into court, it is not necessary that it should be so returned, although the matters submitted were at the time involved in pending suits...... .......... ............. .... 583

3. *Requisites of award.*—A decision by arbitrators, after an examination of the books submitted by the parties, ascertaining a balance in favor of one of the parties, but reserving to themselves the power to make alterations and corrections on the suggestion of errors by the parties within a specified time, has not the finality requisite to an award.—McCrary v. Harrison.. 577

4. *Same.*—Where three arbitrators are selected by the parties, under a statutory submission, (Code, §§ 2710-13,) an award signed by two of them only, in the absence of the third, and without notice to him, is, *prima facie,* void; and the fact that the one who was absent dissented from the conclusion attained by the others, on a former day, as the basis of their final award, instead of excusing the omission to notify him, shows the greater necessity of notice................................. 577

5. *Sufficiency of award, and averment thereof.*—An averment that the arbitrators, under a submission of all matters in dispute between the plaintiff and defendant, in relation to the crop grown by them on the defendant's plantation, "awarded to plaintiff the one-fifth part of said crop," is sufficiently certain; but, if the award simply determines, "that the contract has been proved, that R. (defendant) was to give T. (plaintiff) the fifth of the crop made for said R.," it is not sufficient to support the averment.—Roundtree v. Turner........................ 555

6. *Equitable relief against award.*—A court of equity will not set

ARBITRATION—continued.

aside an award, on account of an objection of which the complainant was fully advised at the time he executed it.—Willingham v. Harrell......................................... 583

7. *Same.*—A court of equity will not set aside an award, on the application of a party who, more than two years before the filing of his bill, voluntarily paid more than one-half of the amount found against him by the arbitrators, and gave his notes for the residue; and who, if he had exercised ordinary prudence and circumspection, would have been fully informed before he executed it of the existence of the facts on account of which he seeks to set it aside.......................... 583

ASSUMPSIT.

1. *When recovery may be had under common counts.*—Under a complaint containing only the common counts for money had and received, and for goods sold and delivered, a recovery cannot be had for the breach of a special contract, by which the plaintiff authorized the defendant to sell a horse belonging to them both jointly, and which the defendant violated by exchanging the horse for another, and retaining the latter as his own property.—Fuller v. Duren................................ 73

See ACTION, 1, 2, 3.

ATTACHMENT.

1. *Want of affidavit not available on error.*—In an action against a non-resident, commenced by attachment, the want of the statutory affidavit, or the failure of the record to set out the affidavit if made, (Code, §§ 2561–62,) is not available on error, after judgment by default.—Dow v. Whitman & Ousley.......... 604

2. *Publication against non-resident.*—A recital in the judgment, that "publication was made giving defendant notice according to law," (Code, § 2510,) is not sufficient, on appeal, to sustain a judgment by default against a non-resident........ 604

3. *What constitutes assignment of note, as against attaching creditor.* Where a debtor places promissory notes, payable to himself, in the hands of an agent, with written instructions to collect them, and to pay over the proceeds to certain specified creditors, this does not amount to an assignment or transfer of the notes, either to the specified creditors, or to a surety who afterwards pays their debts, as against a subsequent attaching creditor.—Clark, Austin & Smith v. Cilley................. 652

4. *Against whom garnishment lies.*—A public or municipal corporation is not amenable to the process of garnishment, under the laws of this State; and this exemption involves no violation of the first article of the constitution, which declares that "no set of men are entitled to exclusive, separate emolu-

ATTACHMENT—CONTINUED.

monts or privileges, but in consideration of public services." Clark & Saunders v. Mobile School Comm'rs................ 621

5. *Garnishment on judgment by justice of the peace.*—Under the provisions of the Co·le, (§§ 2471, 2819,) a justice of the peace has authority to issue a garnishment on a judgment rendered by him.—Gould v. Meyer.............................. 565

6. *What constitutes record of garnishment case.*—Where a justice of the peace sends up to the circuit court, in return to a *certiorari*, the affidavit made before him to procure the issue of a garnishment on a judgment, the summons served on the garnishee, the garnishee's answer, the judgment thereon rendered against him, and a statement of the original judgment,—this is, *prima facie*, a sufficient return of the proceedings had in the garnishment case; and it is incumbent on the party who objects to its sufficiency to show affirmatively that there were other proceedings ........................................ 565

7. *Waiver of objection by garnishee to affidavit and summons.*—After a garnishee has appeared and answered, admitting an indebtedness to the defendant, and a judgment has been thereon rendered against him, and he has transferred the cause to the circuit court by *certiorari*, he cannot there raise an objection, for the first time, either to the affidavit, or to the summons of garnishment ......................................... 565

8. *Waiver of right to answer anew.*—If the garnishee, after the rendition of judgment against him by the· justice, removes the cause by *certiorari* into the circuit court, and there fails to appear, he cannot complain on error that he was not permitted to answer anew in the circuit court..................... 565

9. *Sufficiency of garnishee's answer.*—Where the garnishee's answer admits an indebtedness to the *defendant*, (there being two defendants to the original judgment,) and the antecedent proceedings against him show which one of the defendants is meant, this is sufficient to sustain a judgment against him as the debtor of that defendant.............................. 565

10. *Answer of garnishee, and who may defend for him.*—On the failure of the garnishee to appear and claim the right to answer anew in the circuit court, his petition for the *certiorari* cannot be received and treated, on motion of his counsel, as a new answer to the garnishment; nor can his surety on the *certiorari* bond be allowed to defend for him................ 565

11. *When action lies for suing out attachment.*—In an action to recover damages for the wrongful and malicious suing out of an attachment, a charge, instructing the jury, "that if the defendants did not sue out the attachment with malice, or from a disposition to vex or harass the plaintiff, but honestly believed that they had reasonable and probable cause to sue out the attachment," then the plaintiff was not entitled to recover, asserts a correct legal proposition.—Benson & Co. v. McCoy.. 710

ATTACHMENT—CONTINUED.

12. *Same.*—The fact that a non-resident debtor, against whom an attachment is here sued out by a non-resident creditor, did not have sufficient property in the State of his residence to pay all the debts then and there owing by him, although sufficient to pay the debt of such attaching creditor, (Code, § 2509,) is no defense to an action on the attachment, to recover damages for the wrongful suing out of the writ.—Jones v. Lawrence  618

ATTORNEYS-AT-LAW.

1. *Attorney's right to practice before municipal court.*—Although a *quasi*-criminal proceeding before the mayor of Mobile, for an alleged violation of a municipal ordinance, is neither a "criminal prosecution," nor a "civil cause," within the meaning of the 10th and 29th sections of the 1st article of the constitution, securing to a party the right "to be heard by himself and counsel;" yet, under section 730 of the Code, construed in harmony with the general spirit and policy of these constitutional provisions, an attorney-at-law who has been regularly licensed by the supreme court, and who has taken the prescribed oath, has a legal right to appear, when employed for that purpose, as counsel for persons who are on trial before the mayor for alleged violations of the municipal laws; and, under section 3403, he has also a right to appear as counsel for the accused on a preliminary investigation before the mayor as committing magistrate.—Withers v. The State . . . . . . . . . .  252

2. *Power of court to remove or silence attorney.*—For any disrespectful or contemptuous behavior in court, tending to impair the respect due to judicial tribunals, or to interrupt the due course of trial, an attorney may be punished at the time for contempt, (Code, §§ 561–3;) and for any willful violation of professional duty he may be removed or suspended from his office, (§§ 747–61;) but, until he has been removed or suspended by the judgment of the circuit court, rendered in a statutory proceeding instituted for that purpose, no court can exclude him from practice at its bar, on account of any disrespectful language or conduct on a past occasion . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  252

3. *Agreement of counsel, for entry of decree by consent, enforced against party.*—Under a bill for the dissolution and settlement of a mercantile partnership, a written agreement between the counsel of the respective parties, stating the terms of the decree to be entered up by consent, held to have been properly enforced by the chancellor, against the objection of one of the parties, supported by his own affidavit, on the ground of errors and mistake; the affidavit being controverted by the oath of the opposite party, and no evidence being adduced in support of it.—Charles v. Miller . . . . . . . . . . . . . . . . . . . . . . .  141

## BAIL.

1. *Right of bail on account of continuances.*—The right to bail in capital cases, on account of continuances by the State, (Code, §§3671-72,) is confined to cases which have been twice continued "for the testimony of absent witnesses."—*Ex parte Carroll & Adcock*................................................ 301

2. *P, tice on applications for bail.*—When an application for bail is made to a circuit judge, and is by him refused, the party may have the evidence set out in a bill of exceptions, (Code, §3678,) and make application thereon to the supreme court for bail; but he cannot make a second application to a circuit judge, founded on cumulative evidence discovered since his first appplication; nor can he bring the first application before the supreme court for review, by making the proceedings then had a part of his second application, and reserving a bill of exceptions to the refusal of the second application............... 301

3. *Same.*—When a party who is in custody has sued out a *habeas corpus* before a circuit judge, who refuses to discharge him, he may then make application to the supreme court, to revise the action of the circuit judge; but the facts on which the action of the circuit court was based must be brought to the notice of the supreme court.—*Ex parte* Cleveland...... ................... 306

4. *Sufficiency of recognizance, and admissibility of parol evidence in aid of it.*—A demurrer does not lie to a *scire facias* against bail, because the offense charged in the indictment is intentionally injuring telegraph wires, while in the *capias*, bail-bond and *scire facias*, it is described as malicious mischief; nor can the bail avail themselves of the supposed variance by motion to exclude the *capias* and bail-bond; but those papers may be connected with the indictment to which they relate, by the parol testimony of the sheriff and clerk.—*Welch v. The State*.................................................................. ..................... 277

## BAILMENT.

1. *Rights and liabilities of hirer of slave.*—Under a general contract of hiring, the hirer has no right to employ the slave in assisting to raise a gin-house on his plantation, or to hire or loan him to another to be so employed, if that service involves greater danger than prudent masters are usually willing to have their slaves exposed to; yet, if the slave is hired for the specific purpose of being employed as a plantation hand, and it becomes necessary to erect a gin-house on the plantation during the term, and that service is commonly performed by plantation hands whenever it is needed, the hirer is authorized to employ him in that service, provided he exercises due care and prudence to prevent accident or injury; but he cannot hire or loan the slave to another, for the specific purpose of being so employed, if that service involves greater danger than the ordinary labor of plantation hands.—*Jones v. Fort.* 449

BAILMENT—CONTINUED.

2. *When sub-bailee of hirer is liable in trover.*—If the hirer of a slave under a general contract, or under a special contract for his employment as a plantation hand, gratuitously lends him to another person, for the specific purpose of being employed in raising a gin-house, and the slave is killed while so employed, the sub-bailee is liable to the owner for his value, in trover, no matter what degree of care he exercised in having the work performed, although he had no notice of the owner's title, and no reason to suppose that the hirer was not the owner.......................................................................... 449

3. *Bailment of note as collateral security.*—When a note is endorsed and transferred as collateral security, a subsequent payment of the original debt by the transferror operates as a re-transfer to him of the endorsed note; and if the creditor, or his personal representative, refuses to deliver the note on demand, trover lies against him for the conversion.—Overstreet v. Nunn's Executors.............................................................................. 649

4. *Same.*—If the debtor afterwards pays his original debt in full, he may maintain an action at law against the creditor, to recover money collected on the transferred note before the payment of the original debt.—S. C................................................... 666

BILL OF EXCEPTIONS.

1. *When necessary.*—A defendant in a summary proceeding, having been brought into court by the service of a legal notice, cannot object on error to the allowance of an improper amendment of the notice, unless he reserved the point by bill of exceptions at the time of the allowance of the amendment. Simmons v. Varnum...................................................... 92

2. *Same.*—The refusal of the circuit court, on sustaining a demurrer to a plea, to allow the defendant leave to plead over, is not revisable on error, unless an exception was reserved to it.—Powell v. Asten............................................................ 140

3. *Execution of.*—The term of the circuit court having expired by law at twelve o'clock on Saturday night, a bill of exceptions, signed by the presiding judge on the next morning, "before the verdict and judgment and sentence of the court, or either of them, had been entered on the minutes of the court, and before the minutes were signed," cannot be considered as having been signed during the term.—Bryant v. The State..................................................................... 270

BILLS OF EXCHANGE, AND PROMISSORY NOTES.

1. *Note presumptive evidence of settled accounts.*—On settlement of accounts between a debtor and his creditor, a note being given for the ascertained balance, an order, previously given by the creditor to a third person, if then accepted or paid, is pre-

48

BILLS OF EXCHANGE, AND PROMISSORY NOTES—CONTINUED.
sumed to have entered into the settlement.—Ala. & Miss.
Railroad Co. v. Sanford & Reid.................................................. 703

2. *Burden of proof; failure of consideration of note.*—In an action
on an unconditional promissory note, given for professional
services to be rendered by the payee as an attorney-at-law, and
payable on a day certain, the *onus* is not on the plaintiff to
prove performance of the stipulated services, but on the de-
fendant to show a failure of performance; and proof of the
fact that the attorney was absent at the first ensuing term of
the court in which the cause was pending, and that the cause
was compromised by the parties before the next term, without
more, does not even tend to establish a failure of considera-
tion.—Douglass v. Eason.................................................. 687

3. *What constitutes assignment of note, as against attaching creditor.*
Where a debtor places promissory notes, payable to himself, in
the hands of an agent, with written 'instructions to collect
them, and to pay over the proceeds to certain specified credit-
ors, this does not amount to an assignment or transfer of the
notes, either to the specified creditors, or to a surety who after-
wards pays their debts, as against a subsequent attaching cred-
itor.—Clark, Austin & Smith v. Cilley.................................. 652

BILL OF PARTICULARS.

See ACCOUNT, 1.

CHANCERY.

I. JURISDICTION.

1. *Equitable relief against award.*—A court of equity will not set
aside an award, on account of an objection of which the com-
plainant was fully advised at the time he executed it.—Wil-
lingham v. Harrell............................................................ 583

2. *Same.*—A court of equity will not set aside an award on the
application of a party who, more than two years before the
filing of his bill, voluntarily paid more than one-half of the
amount found against him by the arbitrators, and gave his
notes for the residue; and who, if he had exercised ordinary
prudence and circumspection, would have been fully informed
before he executed it of the existence of the facts on account
of which he seeks to set it aside................................. 583

3. *When widow may come into equity, against husband's administrator.*
A widow cannot maintain a bill in equity, against the adminis-
trator of her deceased husband, to recover money belonging to
the *corpus* of her statutory separate estate, which the husband
had received in his life-time, and had not paid over or account-
ed for. (A. J. WALKER, C. J., *dissenting.*).—Bennett's Adm'r v.
Bennett.................................................................. 571

CHANCERY—continued.

4. *When wife's administrator may come into equity.*—The personal representative of the wife cannot maintain a bill in equity, against the personal representative and heirs-at-law of the husband, to recover property which accrued to the wife after her desertion by the husband; which was claimed, held and controlled by her as a feme sole; of which the husband never had possession, and to which he never asserted any claim or title. Bell's Adm'r v. Bell.................................... ................... 195

5. *When administrator may come into equity.*—The administrator of a deceased tenant for life cannot come into equity, to recover property which he claims as emblements accruing during the year in which his intestate died; his remedy at law being adequate and complete.—Coleman v. Camp..................... ........... 160

6. *When debtor's beneficial interest in trust property may be subjected in equity to payment of debts.*—Under a deed of gift, by which slaves and other personal property are conveyed to a trustee, for the separate use and benefit of the grantor's daughter, then a married woman, and her children, free from the control, debts and liabilities of her husband; with a further stipulation, that the trustee "shall and will, at all times hereafter, permit all, or such portion of said property, to be and remain in the possession and under the control of" the daughter, "as shall and may be necessary for the welfare and comfort of her and her children;" provided, that the trustee "may and shall, at any and all times, have the right and authority to take possession of said property, should he deem it necessary and proper for him so to do, and to manage and employ the same as shall be to the true interest and benefit of herself and her children," although no portion of the trust property can be sold for the payment of the daughter's debts, her share of the income and profits may be severed and applied in equity. (RICE, C. J., *dissenting.*)—Robertson & Pettibone v. Johnston.................... 197

7. *Settlement of decedents' estates.*—After the settlement of a decedent's estate has been commenced in the probate court, it cannot be removed into the chancery court, by either party, without the assignment of some special reason justifying the interposition of equity.—Park v. Park................................ 132

8. *Same.*—In this State, the chancery court retains its original jurisdiction over the administration of decedents' estates, and may be appealed to by a proper party, before the concurrent jurisdiction of the probate court has attached, without the assignment of any special reason; but, to authorize an executor or administrator to seek its aid and instruction, he must show some special circumstances, requiring or justifying its interposition.—McNeill v. McNeill................................... 109

9. *Same.*—Neither the fact that the administrator, before the expiration of eighteen months from the grant of administration,

CHANCERY—CONTINUED.

and before he ascertained that the estate would prove insolvent, paid debts not of a preferred class; nor the fact that he was the surety of his intestate, on one of the debts so paid, which was a note given for the purchase-money of land; nor the fact that he has a controversy with a commission-merchant, to whom he shipped the cotton belonging to the estate, and by whom the proceeds of sale were retained, under an alleged contract with the intestate in his life-time, in payment of balance due for advances,—authorizes the administrator to come into equity..................................................... 109

10. *Marshaling assets between legatees and heirs-at-law.*—A creditor will not be allowed, in equity, to enforce satisfaction of his debt out of slaves specifically bequeathed, when the legatee shows that there are descended lands, which, as between himself and the heir-at-law, ought to be first subjected, but will be required first to exhaust the latter fund; but, when the effect of such arrangement would be to lessen or impair the obligation of the creditor's contract, or to subject his claim to any additional peril, or to unreasonably delay him in the enforcement of it, the court will not thus interfere; consequently, when it is not shown who the heirs-at-law are, nor whether they are within the jurisdiction of the court, and it appears that, while the specific legatees are precluded by a former decision of the court from contesting the justice of the creditor's demand, the testator was in fact an infant when the liability was contracted, and that the only evidence of the debt is a judgment rendered against the executor, the creditor will be allowed to pursue his remedy against the specific legatees. Sanders v. Godley's Adm'r........................................... 50

11. *Injunction of probable nuisance.*— A private stable, near a church, not being necessarily a nuisance; and the probable inconvenience that may result from its use, to the congregation worshipping in the church, not being a mischief of that vast and overwhelming character which authorizes the interference of a court of equity in advance of a trial at law,—the chancery court will not enjoin its erection, at the instance of the corporate authorities of the church, on the ground that it will be a nuisance.—St. James Church v. Arrington........................... 546

12. *Contract held conditional sale, and not mortgage.*—A written instrument, signed by the defendant, reciting that he had *purchased* from the complainant several slaves, specifying the name and separate value of each, and then stipulating that, if the complainant "shall redeem, or cause to be redeemed, any part of said negroes within seven years," the defendant would make a specific deduction from the value of each,—whether considered by itself, or in connection with an absolute bill of sale, executed on the next day, which acknowledged the receipt of the money in full payment for the slaves, and con-

CHANCERY—continued.

tained a warranty of soundness and title, is a conditional sale, and not a mortgage; nor will a court of equity declare the contract to be a mortgage, on proof that the complainant at first applied to the defendant for a loan of money, or other pecuniary aid—that the defendant declined to loan money, but made another proposition in reply, to which the complainant did not accede; and that by the arrangement finally concluded between them, the defendant assumed a large debt due from the complainant to a third person, took the negroes at the prices in the writings above mentioned, and received from the complainant his several promissory notes for the difference between the aggregate price of the slaves and the amount of the assumed debt; there being no proof of fraud, imposition, or unfairness, nor any great disparity between the value of the slaves and the price agreed to be paid.—Swift v. Swift............ 147

13. *Reformation of conveyance; laches.*—The lapse of three years, between the discovery of the mistake and the filing of the bill to correct it, does not show such laches as will deprive the party of the right to relief, when it appears that the defendant was insolvent, and that the plaintiff made repeated efforts to have the mistake corrected without the expense of a law-suit. Thompson v. Marshall........................................................ 504

14. *Same; insufficient attestation of instrument.*—It is no objection to the reformation of a conveyance, embracing both real and personal property, that it is not attested in such manner as is necessary to pass the title to the realty........................... 504

15. *Same; adverse possession.*—The validity of a conveyance, *inter partes*, not being affected by the fact that the property was adversely held at the time of the execution of the instrument, such adverse possession constitutes no objection to the reformation of the instrument in equity....................................... 504

16. *Same; statute of frauds.*—The fact that a contract in writing, signed by only one of the parties, contains stipulations to be performed by the other which are within the statute of frauds, will not prevent a reformation of the instrument in equity at the suit of the latter............................................................. 504

17. *Removal of husband as trustee.*—A deliberate and permanent abandonment of the wife by the husband, without reasonable cause, is sufficient (Code, § 1994) to authorize his removal from the trusteeship of her statutory separate estate.—Boaz v. Boaz. 334

18. *Removal of mother from custody of infant children.*—The chancery court will remove infant children from the custody of their father or mother, whenever it is clearly shown that their morals, safety or interests require their removal; but this jurisdiction is one of extreme delicacy, and will only be exercised in cases of gross misconduct on the part of the parent, or inability from some cause to furnish proper nurture and training

CHANCERY—CONTINUED.

for the child. The fact that the second husband of the mother, who shares with her the care and management of her infant children, is not a man of unexceptionable morals, and is addicted to profanity, even in the presence of his family, is not sufficient cause for the removal of the children from the custody of the mother, against her wishes, when it is shown that they are treated kindly, are well fed, well clothed, and sent to school; that no charge is made for their board and lodging, and that they are of such tender years as to require their mother's constant watchfulness and care.—Striplin v. Ware, 87

19. *Purchase by administrator at his own sale set aside.*—The chancery court has jurisdiction, at the suit of the distributees of an intestate's estate, to set aside a sale by the administrator of personal property, under an order of the probate court, at which the administrator himself became the purchaser.—Payne v. Turner,........................................................................ 623

20. *Same.*—The purchase of a slave by the administrator in this case, at a sale made by himself under an order of the probate court, was set aside at the instance of the distributees of the estate, on proof that very few persons were present at the sale; that only one bid was made; that the price at which the slave was knocked off was less, by $200 to $400, than her real value; that the administrator made no effort to attract a crowd at the sale, and declined to impart information as to the time and place of sale to the intestate's father, who, as he knew, desired to purchase........................................................ 623

21. *Purchase by executor and guardian at his own sale.*—The defendant having married the complainants' mother, who was at the time their guardian by appointment from the probate court, and also executrix of their deceased father's will; and having afterwards procured from the probate court, as executor in right of his wife, an order for the sale of decedent's real estate, which was devised to the complainants jointly with their mother; and having himself become, through an agent, the purchaser at the sale,—the sale was set aside at the instance of the infant devisees, although no fraud, unfairness, or inadequacy of price was shown.—Calloway v. Gilmer.................. 354

22. *Purchase by mortgagee at his own sale.*—A purchaser of land, having executed to his vendor a mortgage to secure the payment of the purchase-money, and having afterwards resold the land to a third person, who agreed that he would discharge the unpaid balance due to the vendor, and that the land should remain bound by the mortgage, is not within the rule which forbids a mortgagee to purchase at his own sale, and may become the purchaser at the sale under the mortgage. McNeill v. McNeill........................................................ 109

23. *Same.*—The wife of the mortgagor, claiming under a voluntary conveyance from her husband subsequent to the mort-

CHANCERY—CONTINUED.

gage, may, in equity, impeach the validity of the sale under the mortgage; and if her bill alleges that the mortgage debt was nearly (if not quite) paid, that the mortgagee concealed from her the true state of the account between himself and the mortgagor, had the property sold for a pretended debt greater than was actually due, and, in effect, became himself the purchaser at the sale, she makes out a case for equitable relief.—Cain v. Gimon.................................................... 168

24. *Equitable assignment of vendor's lien.*—An unqualified endorsement of a promissory note, given for the purchase-money of land, is an equitable assignment of the vendor's lien; and an unqualified assignment of a judgment, recovered by the endorsee upon the note, carries with it the same lien.—Griffin v. Camack.................................................... 695

25. *Subrogation of surety to vendor's lien.*—If the administrator of an insolvent estate pays in full, with his own individual funds, a note given for the purchase-money of land, on which he was bound as his intestate's surety, he cannot claim to be subrogated, in equity, to the vendor's lien on the land.—McNeill v. McNeill.................................................... 109

26. *Jurisdiction of equity to establish and quiet title to right of way.* A court of equity has jurisdiction, at the suit of a purchaser from the devisee, to enforce the specific performance, against a purchaser of the servient lands, of an express grant by devise, of a right of way appurtenant, by establishing the right, defining the track, and enjoining the disturbance of the way. Lide v. Hadley.................................................... 627

27. *Compensation.*—On decreeing the specific performance of the grant of a right of way, establishing the right, defining the track, and enjoining the disturbance of the way, the court will also order an account of the damages sustained by the complainant from the defendant's denial and disturbances of his right.................................................... 627

II. PLEADINGS AND PRACTICE.

28. *Parties to injunction suit.*—It is improper to make the probate judge a defendant to a bill in chancery, which seeks to enjoin the settlement of an estate pending in his court.—McNeill v. McNeill.................................................... 109

29. *Allegations of bill.*—In a bill to set aside an award, a general charge that the arbitrators "were guilty of fraud, partiality and corruption," without a specification of particulars, is wholly insufficient.—Willingham v. Harrell.................................................... 583

30. *Same.*—In a bill to correct errors of law and fact in the final settlement of a guardian's accounts before the probate court, (Code, §§ 2041, 1915–16,) an averment "that said account was stated and filed to suit the embarrassed state of said guard-

CHANCERY—continued.

ian," without a specification of the particular errors complained of, is not sufficiently precise and definite.—Travis v. Frierson. 720

31. *Offer to do equity.*—In a bill filed by a voluntary purchaser from the mortgagor, seeking to set aside the sale under the mortgage on the ground of fraud, and to be let in to redeem, an averment that the complainant is ready to pay the amount admitted to be due on the mortgage debt, "and hereby tenders that amount, or any other sum that may be found due, and submits herself to this court for its decree in that behalf", is a sufficient tender.—Cain v. Gimon .......................... 168

32. *Offer of indemnity.*—In a bill filed by the distributees of an intestate's estate, seeking to set aside a purchase of slaves by the administrator, at a sale made by himself under an order of the probate court, an offer of indemnity is not necessary. Payne v. Turner ........................................... 629

33. *Affidavit of lost instrument.*—When a party comes into equity to obtain the benefit of an instrument properly belonging to the jurisdiction of a court of law, on the ground that it is lost, an affidavit of its loss must accompany the bill; but this rule does not apply to a bill for the foreclosure of a mortgage, given to secure the payment of a note which is alleged to be lost. O'Bannon v. Myers' Executors .......................... 551

34. *Amendment of bill.*—A mere inconsistency, or repugnancy between the allegations of the original and amended bills, does not render the allowance of the amendment improper; there must be an inconsistency, or repugnancy, in the purposes of the bill, as contradistinguished from a modification of the relief sought.—Cain v. Gimon............................................ 168

35. *Effect of amendment.*—So far as the equity of the bill is concerned, an amendment takes effect as of the date of the original bill.................................................................. 168

36. *Weight of responsive answer.*—A sworn answer, denying a material allegation of the bill, throws on the complainant the *onus* of sustaining his averment by the testimony of two witnesses, or of one witness with corroborating circumstances. Easterwood v. Linton ..................................... 175

37. *Same.*—Where the bill alleges that an original paper, a copy of which is appended as an exhibit to the bill, is in the defendant's possession, and specially interrogates him as to the correctness of the alleged copy, and requires him to point out the differences (if any) between it and the original; and the defendant specifies in his answer two particulars in which the alleged copy differs from the original, and avers that there are other differences which he cannot recollect,—this does not impose upon the complainant the *onus* of proving the correctness of the alleged copy.—Hartwell v. Whitman ............ 712

38. *Same.*—A statement in an answer, to the effect that "respondent does not admit the statement of moneys paid as charged

CHANCERY—CONTINUED.

in the bill to be correct, but avers that the aggregate of said payments but little (if any) exceeded the amount of principal and interest due on the first of said notes," does not so negative the payments claimed in the bill as to require the testimony of two witnesses, or of one witness with corroborating circumstances, to overturn it.—Bobe's Heirs v. Stickney. ... 482

39. *Same.*—The recital of a note in a mortgage given to secure it, although it does not estop the mortgagor from denying the existence of the note as recited, is not sufficient to overcome his sworn denial of its existence in his answer to a bill in chancery.—O'Bannon v. Myers' Ex'rs.... ...................... 551

40. *Same.*—The issue in this case being, whether the *feme covert* defendant executed the promissory note which was sought to be charged upon her separate estate, and which purported to be signed by her, jointly with her husband; one witness expressing the opinion that her signature was genuine, while four other witnesses testified, that the handwriting, though closely resembling the defendant's, was not hers; and the evidence showing that, when the note was handed to the husband, and he was required to procure his wife's signature, he went with it towards the room occupied by himself and wife, and returned with her name signed to it,—*held*, that the evidence was not sufficient to overcome the sworn denial of the answer. Starke v. Blackwell................................................ . 154

41. *Variance.*—There can be no decree in chancery, in favor of the complainant, without a substantial correspondence between his allegations and proof.—O'Bannon v. Myers' Ex'rs.. 551

42. *Same.*—Under a bill which alleges that a contract for the sale of slaves was a mortgage, and prays for a redemption and account, if the evidence shows that the contract was a conditional sale, there is a fatal variance between the allegations and proof.—Swift v. Swift................................................. 147

43. *Same.*—Under a purchaser's bill, seeking a reformation of his vendor's title-bond, by the insertion therein of a parcel of land, which, he alleges, was a part of the tract purchased by him, and was omitted from the bond by the fraud or mistake of his vendor,—if the evidence shows that the said parcel was omitted by mistake, and that another parcel, not constituting a part of the tract sold, was inserted in the bond by mistake in lieu of the omitted parcel, the complainant cannot have a decree.—Easterwood v. Linton............................. 175

44. *Same.*—So, where the bill alleges, that the vendor had no title to one parcel of land included in the title-bond; and the evidence shows that said parcel formed no part of the tract sold, but was inserted by mistake in lieu of another parcel, to which the vendor had title,—the complainant cannot have a decree...................... .......................... ...... 175

45. *Same.*—In a bill between co-sureties for contribution, alleging

CHANCERY—CONTINUED.

that the defendant received a certain draft from the principal as an indemnity, and gave a receipt for the same, wherein it was recited and stipulated that the money collected on the draft should be applied to the payment of the judgment against the two sureties,—the date of the receipt, and the description of the judgment, are immaterial matters; consequently, a variance between the allegations and proof, in these particulars, is not fatal to the plaintiff's case.—Hartwell v. Whitman................................................. 712

46. *Refunding bond.*—When an injunction of a judgment or action at law is dissolved by interlocutory decree, the defendant must be required to give a refunding bond, as prescribed by section 2982 of the Code.—McLaughlin v. McLaughlin.... 145

47. *When exception to master's report is necessary.*—Where the chancellor, in ordering a reference to the master, prescribes the rules to be observed in the statement of the account, and the master conforms to those rules, an exception to his report is not necessary to enable the appellate court to examine into the correctness of the account thus stated. –Bobe's Heirs v. Stickney................................... ......... 482

48. *What is revisable on error.*—On appeal from a decree in chancery, dissolving an injunction on the denials of the answer, without passing on the equity of the bill, the appellate court will only consider the single question decided by the chancellor.—McLaughlin v. McLaughlin........................... 145

49. *Same.*—On appeal by the complainants from a final decree in chancery in their favor, assigning as error the rules adopted by the chancellor for the statement of the accounts between the parties, the appellate court will not, at the instance of the appellees, consider the equity of the bill.—Bobe's Heirs v. Stickney................................................. 482

50. *Same.*—On appeal from a final decree in chancery, granting to the wife a divorce *a vinculo matrimonii,* and ordering the husband to pay her a specified sum as temporary alimony, and an additional sum to her solicitors as compensation for their services, the order for the payment of the solicitors' fees is revisable; but, on the question whether the order for the payment of temporary alimony is revisable, the majority of the court express no opinion. (A. J. WALKER, C. J., *dissenting,* held that neither portion of the order for the payment of money was revisable.)—Jeter v. Jeter..................... 391

CHARGE OF COURT.

1. *Abstract charge.*—An abstract charge is properly refused. Donohoo v. The State..................................... 281

2. *Same.*—A charge cannot be considered abstract, when there there is any evidence, however weak, tending to support it. Jones v. Fort.......................................... 449

CHARGE OF COURT—CONTINUED.

3. *Charge objectionable for obscurity or generality.*—A charge which is not abstract, and which asserts a correct legal proposition, though it may be objectionable for generality and obscurity, or calculated to mislead the jury, is not an error which will work a reversal: the party who supposes himself injured by it, should ask an explanatory or qualifying charge...................... 449

4. *Same.*—The giving of a charge which asserts substantially a correct legal proposition, although calculated to mislead the jury, if critically considered, affords no ground for the reversal of the judgment: the party should ask an explanatory charge. Fitzpatrick v. Hays................................................. 684

5. *Charge invading province of jury.*—A charge which assumes a fact as proved, when the evidence only tends to establish it, is an invasion of the province of the jury.—Jones v. Fort ..... 449

6. *Same.* The sufficiency of oral evidence to establish the due presentation of a claim against a decedent's estate, is a matter for the determination of the jury; and a charge which instructs them that the evidence, if believed by them, "is not sufficient to authorize them to find a due presentation of the claim," is an invasion of their province.—Frazier's Executors v. Praytor.......................................................... 691

7. *Charge referring legal question to jury.*—It is the duty of the court to determine what facts are necessary to establish the legal signing and attestation of a will; consequently, a charge is erroneous which refers the decision of that question to the jury.—Riley v. Riley........................................................ 496

See, also, CRIMINAL LAW, 28–32.

CODE OF ALABAMA.

1. §§ 397, 399, 400. *Sale of slave by unlicensed broker or negro-trader.*—Brooks v. Pollard.................................. 573
   Also, Dillard v. Scruggs...................................... 670
   Clement v. Cureton.......................................... 120
2. §§ 561–62. *Contempt of court.*—Withers v. The State............ 252
3. §§ 747–61. *Removal or suspension of attorney-at-law.*—Withers v. The State.................................................. 252
4. §§ 763, 775, 2141. *Actions against county.*—Marshall County v. Jackson County ............................................. 613
5. § 1058. *Retailing liquor.*—Patterson v. The State............ 297
6. § 1176. *Obstruction of public road.*—Prim v. The State...... 244
7. § 1203. *Action against county for damages by fall of bridge.* Barbour County v. Brunson................................... 362
8. § 1295. *Three years possession of personalty under loan.*—Durden v. McWilliams................................................. 345
9. § 1354. *Right of dower.*—Harrison v. Boyd.................... 203
   Also, Boyd v. Harrison....................................... 533
10. § 1359. *Widow's quarantine.*—S. C....................... 203, 533

CODE OF ALABAMA—continued.

11. §§ 1551–52. *Statute of frauds.*—Sawyer v. Ware..................... 675
 Also, Scroggins v. Blackwell.......................... ...... 351
 Knox v. King................................................ 367
 Ledlow v. Becton........................................... 596
12. § 1556. *General assignment.*—Stetson & Co. v. Miller......... 642
13. § 1563. *Action for money lost on horse-race.*—Davis v. Orme.... 540
14. § 1602. *Implied revocation of will.*—Welsh v. Pounders...... 668
15. § 1611. *Execution and attestation of will.*—Riley v. Riley....... 496
16. §§ 1737, 1751. *Administrator's authority to rent land.*—Boynton
 v. McEwen........................................'............... 348
17. § 1813. *Administrator's liability for interest.*— Roundtree &
 Kirby v. Snodgrass................................. ............... 185
18. §§ 1971–72. *Alimony.*—Jeter v. Jeter....................... 391
19. §§ 1981–88. *Separate estates of married women.*—Walthall v.
 Goree .................................................. 728
20. § 1994. *Removal of husband as trustee of wife's separate estate.*
 Boaz v. Boaz.................................................... 334
21. §§ 2014–15. *Mother's right, as guardian, to custody of infant
 children.*—Striplin v. Ware................................... 87
22. § 2037. *Removal of guardian.*—Cockrell v. Cockrell.........:..... 673
23. §§ 2309, 1825. *Compensation of guardian.*—Allen v. Martin.... 330
24. § 2129. *Who is proper party plaintiff.*—Newsom v. Huey....... 37
 Also, Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid......... 703
25. § 2220. *Slander for words imputing want of chastity to female.*
 Downing v. Wilson.................................'............ 717
26. § 2233. *Bill of particulars.*—Robinson v. Allison.................. 525
27. § 2245. *Plea of tender.*—Rudulph v. Wagner................ 698
28. § 2253. *Demurrer.*—Newsom v. Huey............................... 37
29. §§ 2278–79, 2238. *What instruments import consideration.*—Ala.
 & Miss. Rivers Railroad Co. v. Sanford & Reid................... 703
30. § 2290. *Competency of assignor as witness for assignee.*—Sawyer v.
 Ware....................................................... 675
31. § 2302. *Competency of witness as affected by interest.*—Durden
 v. McWilliams..................................................... 345
 Also, Sawyer v. Ware........................................ 675
 Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid. ............... 703
32. § 2313. *Examination of parties as witnesses.*— Fitzpatrick v.
 Hays.................................................... 684
33. § 2509. *Attachment between non-residents.*—Jones v. Lawrence... 618
34. § 2510. *Publication against non-resident in attachment suit.*—Dow
 v. Whitman & Ousley........................................ 604
35. §§ 2561–62. *Want of statutory affidavit in such suit.*—S. C....... 604
36. § 2645. *Contribution between sureties.*—Simmons v. Varnum.... 92
37. §§ 2710–13. *Arbitrations.*—McCrary v. Harrison.................. 577
38. § 2753. *Inquisition of lunacy.*—In re Carmichael.................. 514
39. §§ 2819, 2471. *Garnishment on judgment by justice of the peace.*
 Gould v. Meyer...................... ................................. 565

CODE OF ALABAMA—CONTINUED.

40. § 2982. *Refunding bond in injunction suit.*—McLaughlin v. Mc-
Laughlin.................................................... 145
41. *Forms of complaints.*—Pike v. Elliott....................... 69
42. § 3016. *When appeal lies.*—Guilford v. Hicks............... 95
43. §§ 3084–85. *Manslaughter.*—McManus v. The State.......... 285
44. §§ 3154–3165. *Forgery.*—Harrison v. The State............. 248
45. § 3283. *Trading with slaves.*—Harrington v. The State.......... 236
46. § 3591. *Objections to grand jury.*—S. C...................... 236
47. § 3600. *Conviction on testimony of accomplice.* — Bird v. The
State..................................................... 279
Also, Harrington v. The State........................... 236
48. § 3608. *Change of venue.*—Mose v. The State............... 211
Also, Paris v. The State.................................. 232
49. §§ 3671–73. *Bail.*—*Ex parte* Carroll & Adcock............. 300
50 § 3692. *Sci. fa. against bail.*—Welch v. The State........... 277
51. §§ 3710–47. *Petition for habeas corpus.*—Guilford v. Hicks..... 95
52. *Forms of indictment.*—Bryant v. The State................. 270

CONFLICT OF LAWS.

1. *What law governs right of dower.*—Authorities cited on the
question, whether the widow's right of dower is governed by
the law which was of force at the time of the husband's death,
or by that which was in existence at the time of the marriage
and acquisition of the land.—Harrison v. Boyd............ . 203
2. *Same.*—The widow's right of dower is governed by the law
which was of force at the time of the husband's death, and
not by that which was in existence at the time of the mar-
riage, or of the husband's acquisition of the land.—Boyd v.
Harrison................................................... 533
3. *What law governs revocation of will.*—The question whether a
will, executed in 1851, is impliedly revoked by a sale and con-
veyance of the land devised by it in 1856, must be determined
by the provisions of the Code of 1853.—Welsh v. Pounders... 668
4. *What law governs validity of contract.*—Where an administrator,
on final settlement of his accounts, was sought to be charged
with the unpaid balance due on a bond, executed by him to
the intestate in his life-time ; which bond, though executed in
Alabama, and binding the obligor to the payment of eight per
cent. interest, was proved to have been given as a substitute for
another bond, containing similar terms, but executed in South
Carolina, and given for the purchase-money of property there
bought by the obligor from the intestate,—*held*, that the valid-
ity of the contract, as to the interest reserved, was to be deter-
mined by the laws of South Carolina.—Broughton's Adm'r v.
Bradley ............................................. 68

## CONSTITUTIONAL LAW.

1. *Act of Feb.* 24, 1860, *loaning two and three per cent. funds to railroad companies, and imposing additional restrictions on loan authorized by former statute.*—The act of Frebruary 17, 1854, "to aid the Tennessee and Coosa railroad," (Session Acts 1853–4, p. 280,) having been accepted and acted on by the said railroad company, by the completion of portions of its road, and the letting out of contracts for the completion of the residue within the time required by said act, it was not competent for the legislature, by the subsequent act of February 24, 1860, (Session Acts 1859–60, p. 110,) to impose additional limitations on the loan authorized by the former act; nor can the latter act operate as a revocation of the authority conferred on the governor by the former; consequently, said railroad company is entitled to receive from the public treasury the sums loaned by the former act, on its performance of the conditions therein specified, without a compliance with the additional requisitions of the latter act.—Tenn. & Coosa Railroad Co. v. Moore.................................................................... 371

2. *Statute authorizing municipal corporation to aid railroad company.* The act of February 8th, 1858, "to authorize the corporate authorities of the city of Mobile to aid in the construction of a railroad, upon a vote of the citizens," (Session Acts 1857–8, p. 165,) and the act supplemental thereto, approved November 29, 1859, (Session Acts 1859–60, p. 294,) are not violative of any constitutional provision; being neither an illegal exercise of the taxing power, nor a taking of private property without just compensation.—Gibbons v. Mobile & Great Northern Railroad Co..................................................... 410

3. *Exemption of public corporation from liability to garnishment.* The exemption of public or municipal corporations from liability to process of garnishment, involves no violation of the 1st section of the 1st article of the constitution, which delares that "no set of men are entitled to exclusive, separate emoluments or privileges, but in consideration of public services."—Clark & Saunders v. Mobile School Comm'rs.......... 621

4. *Attorney's right to practice before municipal court.*—Although a *quasi*-criminal proceeding before the mayor of Mobile, for an alleged violation of a municipal ordinance, is neither a "criminal prosecution," nor a "civil cause," within the meaning of the 10th and 29th sections of the 1st article of the constitution, securing to a party the right "to be heard by himself and counsel;" yet, under section 730 of the Code, construed in harmony with the general spirit and policy of these constitutional provisions, an attorney-at-law who has been regularly licensed by the supreme court, and who has taken the prescribed oath, has a legal right to appear, when employed for that purpose, as counsel for persons who are on trial before

CONSTITUTIONAL LAW—CONTINUED.

the mayor for alleged violations of the municipal laws; and, under section 3403, he has also a right to appear as counsel for the accused on a preliminary investigation before the mayor as committing magistrate.—Withers v. The State ........... 25

CONTRACTS.

1. *Execution and mutuality of contract.*—An instrument in writing, in form a deed, which, after reciting the terms of a contract, whereby the grantor agreed to sell and transfer to the grantee his interest in certain real and personal property then in litigation, conveys the property by proper words, becomes binding on the grantor when signed, sealed and delivered by him, and does not require to be executed by the grantee, although it recites the stipulations of the contract to be performed by him.—Thompson v. Marshall ..... ................................. 504

2. *What instruments import consideration.*—In an action against a railroad company, on a certificate issued by its engineer for work done by a contractor, (which certificate is alleged to have been signed and issued by the engineer as the authorized agent of the corporation, and to have been transferred by the contractor to plaintiff;) there being no sworn plea, denying the execution of the certificate,—the instrument itself is evidence of the existence of the debt, (Code, §§ 2238, 2278–79,) and that it was made on sufficient consideration—Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid........................ 703

3. *Sufficiency of consideration.*—In an action against a railroad company, by the assignee of a certificate issued by its engineer to a contractor for work done on the road, an oral agreement between the contractor and the engineer, to the effect that the certificate should be used in paying a debt due from the contractor to a stockholder, who was indebted to the railroad company, if made after th e issue and delivery of the certificate, is without consideration .................................... 703

4. *Illegal consideration.*—A contract, whether in form a settlement on a mistress, or a promise to pay money, made upon consideration of future illicit cohabitation between the parties, is void; and, although the law may presume, where the evidence leaves it doubtful whether the consideration was for past or future cohabitation, that the former was the real consideration; yet, where it was shown that "there was evidence conducing to prove that the real consideration was future illicit intercourse," the court may properly refuse a charge asserting that legal proposition, although " there was also evidence tending to prove that there had been prior illicit intercourse between them."—Walker v. Gregory.............................. 180

5. *Same.*—Where a party plaintiff cannot make out his case, without the aid of a contract founded on an illegal considera-

CONTRACTS—CONTINUED.

tion, he is not entitled to recover, although the contract may have been executed on his part; but, where a party is resisting a recovery, the rule may possibly be different.................. 180

6. *What law governs validity of contract.*—Where an administrator, on final settlement of his accounts, was sought to be charged with the unpaid balance due on a bond executed by him to the intestate in his life-time ; which bond, though executed in Alabama, and binding the obligor to the payment of eight per cent. interest, was proved to have been given as a substitute for another bond, containing similar terms, but executed in South Carolina, and given for the purchase-money of property there bought by the obligor from the intestate,—*held*, that the validity of the contract, as to the interest reserved, was to be determined by the laws of South Carolina.—Broughton's Adm'r v. Bradley.......................................................... 689

7. *Maintenance.*—A contract, by which one of the defendants to a pending chancery suit, having a common interest with the other defendants in resisting the relief sought, purchases from the others their interest in the property in litigation, with "the hires, rents and damages" which may accrue in the suit, and assumes a liability for their share of the costs and expenses of the suit, is not obnoxious to the charge of maintenance.—Thompson v. Marshall................................. 504

8. *Validity of contract between corporate authorities of Mobile and Great Northern Railroad Company, as affected by failure to comply with terms of act of* 1858.—The act of 1859 having expressly empowered the corporate authorities of Mobile to aid in the construction of the Mobile and Great Northern railroad, by virtue of the vote of the citizens taken under the act of 1858, the failure of said corporate authorities, in taking the vote of the citizens, to comply with the terms of the said act of 1858, does not affect the validity of their contract with said company.—Gibbons v. Mobile & Great Northern Railroad Company .............................................................. 410

9. *Same, as affected by fact that city bonds, with interest, exceed amount of aid authorized by said act.*—Nor is the validity of said contract affected by the fact, that the aggregate amount of the bonds issued by said corporate authorities, with the interest thereon accruing up to the time when they respectively fall due, exceeds one million of dollars, the sum specified in said acts as the maximum of aid to be extended to said railroad company................................................................ 410

10. *Same, as affected by failure to reserve stock for accruing interest on bonds.*—Nor is the validity of said contract at all impaired by the failure to require stock in said railroad company to be issued to the assignee or appointee of the city, for the interest it may pay on said bonds................................. 410

11. *Same, as affected by levy of tax for payment of bonds.*—Although

CONTRACTS—continued.

said acts of 1858 and 1859 only authorized said city authorities to aid said railroad company in one of two ways—*i. e.*, either by direct taxation, or by the issue of city bonds, as might be determined by the vote of the citizens—and not in both ways; yet said city authorities were thereby clothed with the implied power, in the event that the citizens voted in favor of the issue of bonds, to levy a special tax to provide for the payment of the bonds, with interest, as they fall due; and this, moreover, was expressly enjoined on them as a duty by the 13th section of the act of 1843. (Session Acts 1842–3, p. 116)............. 410

12. *Same, as affected by failure to comply with provisions of 9th section of said act of* 1843.—The 9th section of said act of 1843, prohibiting said corporate authorities of Mobile from borrowing money, or creating new debts, "for purposes of profit or improvement," without the unanimous vote of the boards of aldermen and common council, at a full meeting, concurring with the mayor, is expressly reserved from repeal by the act of 1844, "to consolidate the several acts of incorporation of the city of Mobile, and to alter and amend the same," (Session Acts 1843–4, p. 191, § 48,) and is not repealed, or in any manner impaired, by said acts of 1858 and 1859, above cited; nor is said section confined in its operation to the powers which said city authorities were then authorized to exercise. But the issue of bonds under the contract with said railroad company is not, within the meaning of said section, the creation of a new debt "for the purpose of profit or improvement;" consequently, the validity of said contract is not affected by the fact that it was not made at a full meeting of both said boards, and with the unanimous vote of all their members........................ 410

13. *Same, as affected by 16th section of said act of* 1843, *prohibiting contracts between said corporate authorities and individual members.*—Since the contract with said railroad company does not require or authorize any member of the board of aldermen or common council to do any work or perform any service for said corporate authorities, the 16th section of said act of 1843, prohibiting contracts for work or service between said corporate authorities and the individuals composing either board, has no application to the case.................................... 410

14. *Same, as affected by official vote of corporate authorities.*—If said contract be a violation of the official oath, as prescribed by the 7th section of said act of 1844, of those aldermen and common councilmen who were at the time stockholders in said railroad company; yet, since the statute does not declare the prohibited act void, nor impose a penalty for its violation, the contract is nevertheless valid in law.....:...... :........................ 410

15. *Same, as affected by public policy.*—The fact that several of the aldermen and common councilmen were, at the time said

CONTRACTS—CONTINUED.

contract was entered into, stockholders in said railroad company, does not, *per se*, invalidate said contract............... 410

16. *Difference between sale and exchange; sale of slave by unlicensed negro-trader.*—The charges of the court to the jury in this case, relative to the difference between a sale and an exchange, and as to the construction of the statute (Code, §§ 399–400) forbidding the sale of a slave by an unlicensed negro-trader, held, on the authority of *Williamson v. Berry*, (8 How. U. S. R. 544,) to contain no error prejudicial to the appellant.—Clement v. Cureton. 120

17. *Sale of slaves by unlicensed negro-trader.*—The statute prohibiting a sale of slaves by an unlicensed negro-trader, and declaring such sale void, (Code, §§ 397, 399, 400,) does not prevent a negro-trader, in whose sales-house slaves are exhibited for sale and sold by the owner, from recovering by action the half-commissions to which, by the custom of the trade, he is entitled in such case.—Dillard v. Scruggs.................................... 670

18. *Same.*—Neither the 47th sub-division of section 397 of the Code, nor the act of 1856 amendatory thereof, (Sess. Acts 1855–6, p. 25,) prohibits a broker or agent for the sale of slaves from selling a slave belonging to himself, without license.—Brooks v. Pollard. 573

19. *Construction of special contract for sawing lumber; performance, and breach.*—Under a contract by which the plaintiff agreed to let the defendants have all the pine timber on his lands that was suitable for good lumber, and the defendants agreed to saw the same into lumber and sell it as soon as they could, to saw no other lumber until it was done, and to pay the plaintiff, annually, in money, one-fifth of the gross proceeds of the lumber sold and collected by them,—neither the dissolution of the partnership in the mill business between the defendants, nor the sale of the mill under a mortgage executed by one to the other of them, discharges them from the further performance of their contract, which is continuous and entire, and which binds them to performance within such time as will suffice for its accomplishment by the use of a reasonable investment and effort.—Fail & Miles v. McRee,...................................... 61

20. *Contract for sale of manufactured article.*—A contract between the lessor and lessee of certain iron-works, to the effect that " the iron made at the furnace should be W.'s [lessor] as fast as it was made, until he was repaid for his advances in money and the rent due," is a contract for the sale of the manufactured iron, and not for the work and labor bestowed in the manufacture. Sawyer v. Ware.................................... 675

21. *When title passes to purchaser, as against execution creditor of vendor.*—Under a verbal contract for the sale of an article to be manufactured by the vendor, if the contract is within the statute of frauds, the title does not pass to the purchaser until there has been a delivery to him; and if a valid execution against the

CONTRACTS—CONTINUED.

vendor is in the hands of the sheriff during the interval between the manufacture and the delivery of the article, the lien of the execution is superior to the title of the purchaser............ 675

CORPORATIONS.

1. *What constitutes public corporation.*—The Mobile school commissioners, as established by the act " to regulate the system of public schools in the county of Mobile," (Session Acts 1853–4, p. 190,) constitute a municipal or public corporation.—Clark & Saunders v. Mobile School Comm'rs............ ............ 621

2. *Garnishment against.*—A public or municipal corporation is not amenable to the process of garnishment, under the laws of this State; and this exemption involves no violation of the first article of the constitution, which declares that "no set of men are entitled to exclusive, separate emoluments or privileges, but in consideration of public services.".......................... 621

3. *Authority of corporation to lend money.*—The charter of the grand lodge of free-masons of Alabama (Toulmin's Digest, 582–3) confers on said corporation no power to lend money.—Grand Lodge of Alabama v. Waddill............................... 313

4. *Power of municipal magistrate, under ordinance, to imprison slave in default of bond for good behavior.*—Under the 15th section of the act of 1844, " to consolidate the several acts of incorporation of the city of Mobile, and to alter and amend the same," (Session Acts 1843–4, p. 180,) and the ordinance "for the punishment of vagrants and disorderly persons," (Digest of City Charters and Laws of Mobile, 145,) the mayor has no authority or jurisdiction to require a slave to give a bond for his good behavior, or to commit him to jail in default of the execution of such bond.—Withers v. Coyles....................... 320

5. *Construction of municipal ordinance requiring public carriages to be lighted when on duty by night.*—Under the ordinance of the city of Mobile, imposing a fine " on the owner or driver" of a public carriage, hack or cab, for a failure to have the lamps of his vehicle lighted when on duty by night, (Municipal Laws of Mobile, 105, § 86,) it is no defense to the owner, that he was not present, and had no knowledge of the alleged violation of the law by his negro driver.—Dane v. Mayor of Mobile...... 304

6. *Competency of stockholder as witness for private corporation.*—A stockholder in a railroad company is not a competent witness for the corporation.—Ala. & Miss. Rivers Railroad Company v. Sanford & Reid.............................................. 703

CRIMINAL LAW.

1. *Change of venue.*—The statute authorizing a change of venue in a criminal case, (Code, § 3608,) [applies to and includes slaves. Mose v. The State............................................ 211

CRIMINAL LAW—continued.

2. *Same.*—The venue having been changed on the prisoner's application, and the cause afterwards re-transferred, by consent, back to the county in which the indictment was found, and the trial there had without objection on the part of the prisoner, he cannot be heard, in the appellate court, to question the validity of the order re-transferring the cause.—Paris v. The State...... 232

3. *Arraignment, and service of copy of indictment and venire.*—When the record in a criminal case shows that the prisoner, being brought to the bar in custody, pleaded not guilty, without raising any objection to the preliminary proceedings, and was thereupon tried and convicted, the appellate court will not reverse the judgment of conviction, because the record does not affirmatively show that he was formally arraigned, and served with a copy of the indictment and a list of the jury............... 232

4. *Entering plea of not guilty for prisoner.*—Where a prisoner, having been duly arraigned, and having pleaded not guilty on his first trial, refuses to plead anew on a second trial, the court may cause the plea of not guilty to be entered for him.—Mose v. The State.......................................... 211

5. *Objections to grand jury.*—If an indictment is void, because found at a special term, at which the court had no authority to organize a grand jury, the objection may be taken for the first time in the appellate court; but, where the court had such authority, the prisoner cannot (Code, § 3591) take any objection to the indictment, on account of the want of qualifications of any of the grand jurors.—Harrington v. The State................236

6. *Authority of city court of Mobile at special terms.*—Under the act of 1858, "to repeal an act therein named regulating the sessions of the circuit and city courts of Mobile," (Session Acts 1857–8, p. 57, § 3,) the city court has authority, at a special term, to originate business, to take indictments, and to organize a grand jury ........................................ ...................... 236

7. *Presumption in favor of judgment.*—If the validity of an indictment, found at a special term of the city court of Mobile, depended upon the fact that the accused was in custody at the time it was found, and the record did not affirmatively show that he was not then in custody, the appellate court would presume, in favor of the judgment, that he was then in custody......... 236

8. *Sufficiency of indictment.*—It is not necessary that an indictment should show where the session of the court or of the grand jury was held, or that the grand jury was legally called before the court, or that the indictment was returned into court, or that the offense was committed within the period prescribed as a bar by the statute of limitations.,............ .................... 236

9. *Manslaughter.*—If death ensues from the intentional application of unlawful force, though there may have been no specific intention to kill, and though the weapon used is not ordinarily cal-

CRIMINAL LAW—continued.

culated to produce death, the perpetrator is guilty of man-
slaughter in the first degree under the statute of this State,
(Code, §§ 3084–85,) as he would be guilty of voluntary man-
slaughter at common law. (A. J. Walker, C. J., *dissenting*.)—Mc-
Manus v. The State.. ..... . ....................... ....... 285

10. *Murder; sufficiency of indictment.*—An indictment for the mur-
der of "—— Butler, whose christian name is to the grand jury
unknown," is sufficient under the provisions of the Code.—Bry-
ant v. The State ................. ... ............ ... ... 270

11. *Same; relevancy of prisoner's subsequent acts and declarations as
evidence.*—Under an indictment for murder, it having been shown
that the prisoner and the deceased, while on a drunken frolic,
had an altercation together, which resulted in a fight between
them; that the prisoner struck the deceased with a brick-bat
during the fight, and that the latter died from the effects of the
blow during the following night.—it is competent for the State
to prove, " that about a half-hour after the blow had been given,
and after the fight was entirely over, and after the parties had
left the place where the fight occurred, the prisoner went to
the place where the deceased was, with a pistol in his hand,
and said he had come to kill the damned old rascal."—McManus
v. The State .. ............ .............................. 285

12. *Same; admissibility of confessions.*—Where a witness testifies,
that he went to see the prisoner, after his arrest, at the instance
and request of the latter, and found him confined and chained;
that in reply to an inquiry why he had sent for him, the pris-
oner referred to an informal preliminary examination, at which
the witness had assisted, admitted that his denial of guilt on
that occasion was false, and proceeded to confess his guilt; and
that he did not know of any promises or threats previously
made to the prisoner,—this is sufficient, *prima facie*, to show
that the confessions were voluntary, and to authorize their ad-
mission as evidence before the jury.—Mose v. The State...... 211

13. *Same.*—The confessions of the prisoner in this case, who was
a slave, held to have been properly received in evidence under
the facts disclosed in the record, notwithstanding promises of
favor made by his master several weeks previously, and threats
of violence by third persons on the day before such confessions
were made.......................................... .......... 211

14. *Withdrawal of jury pending preliminary investigation by court
touching admissibility of confessions.*—There is no rule of law,
which requires that, pending the preliminary investigation by
the court as to the competency and admissibility of confessions,
the jury should be made to withdraw: if a case should arise,
in which the ends of justice demanded that such a course should
be pursued, an appeal must be made to the enlightened discre-
tion of the presiding judge........................................ 211

CRIMINAL LAW—CONTINUED.

15. *Relevancy of evidence corroborating confessions of prisoner and dying declarations of deceased.*—The fact that a buckshot, of the size admitted by the prisoner to have been used by him in shooting the deceased, was found a month afterwards, lodged in a tree near the scene of the murder, within the range of a gun discharged under the circumstances detailed in the dying declarations of the deceased and in the confessions of the prisoner, is relevant evidence, as corroborating those declarations and confessions................................................ 211

16. *Weight of confessions as evidence.*—The *corpus delicti* being otherwise established, a conviction may be had on the prisoner's confessions alone, if free, voluntary, and satisfactorily proved.. 211.

17. *Selling liquor to slave.*—Under an indictment for selling liquor to a slave, (Code, § 3283,) the fact that the slave's master gave him money, and sent him into the defendant's house to buy liquor, while he himself waited on the opposite side of the street, for the purpose of ascertaining whether the defendant would unlawfully sell liquor to slaves, constitutes no defense. Harrington v. The State.................................... 236

18. *Same; averment of ownership of slave in indictment.*—Since the husband has a special property in his wife's statutory separate estate, (Code, § 1983,) a slave belonging to her separate estate may be described in such indictment as the property of the husband................................................... 236

19. *Retailing; selling liquor drunk on or about premises.*—*Held,* on the authority of *Easterling's* case, (30 Ala. 46,) *Downman's* case, (14 Ala. 243,) and *Brown's* case, (31 Ala. 353,) that the court properly refused to instruct the jury, at the request of the defendant, "that if they believed from the evidence that the liquor was drunk in the State of Tennessee," or, "that it was carried upon land belonging to another person, and over which the defendant had no control, and drunk there,"—they must find the defendant not guilty.—Patterson v. The State............. 297

20. *Forgery; sufficiency of indictment.*—An indictment which charges the felonious uttering and publishing as true of a forged instrument, knowing the same to be forged, is sufficient, (Code, §§ 3154, 3165, 3501, 3518-19, 3526,) although a conviction might also be had for such uttering and publishing under an indictment charging it as forgery.—Harrison v. The State...... 248

21. *Same; plea of former acquittal.*— Under an indictment charging the uttering and publishing as true of a forged instrument, knowing it to be forged, the defendant pleaded a former acquittal, and proved, "that he was heretofore indicted and tried for the forgery of the same instrument with the uttering of which he is charged in the present indictment, and was regularly acquitted upon such trial,—*held,* that presuming this to be all the evidence in the case, there was no error in a charge which

CRIMINAL LAW—CONTINUED.

instructed the jury, "that a trial for, and acquittal of the for-
gery of an instrument, was not a bar to a subsequent indictment
for uttering the same instrument as genuine, knowing it to be
forged.".................................................................................. 248

22. *Burglary.*—Getting into the chimney of a house, with intent
to steal, is a sufficient breaking and entering to constitute bur-
glary, although the party does not enter any of the rooms of
the house.—Donohoo v. The State.................................... 281

23. *Adultery ; relevancy of evidence.*—Under an indictment against
a married man for living in adultery with an unmarried woman,
it having been proved that the defendant frequently visited, by
night, the house in which the woman lived, and was seen lying
in bed with her in her chamber, proof of the woman's general
reputation for a want of chastity is relevant and admissible for
the prosecution.—Blackman v. The State........................... 295

24. *Resisting legal process.*—Under an indictment for resisting the
execution of process by a constable, it having been shown that
the constable was exercising the duties of that office under
color of an election, and that the process in his hands was such
as it is the right and duty of constables to execute, the defend-
ant cannot be permitted to prove that, by reason of a taint in
his blood, the constable was constitutionally incapacitated to
hold any civil office.—Heath v. The State........................... 273

25. *Obstruction of public road.*—To obstruct a public road by a
fence, bar, or other impediment of like kind or description,
placed in or upon the road, is made a misdemeanor by statute,
(Code, § 1176 ;) but, where the obstruction is caused by a mill-
dam, erected at some distance from the road, whereby the
water is backed up and increased at the point where the stream
crosses the road, to such a depth as to impede and interfere
with travel, this is no violation of the statute, unless *willfully*
done.—Prim v. The State............................................... 244

26. *Conviction on testimony of accomplice.*—A conviction cannot be
had on the uncorroborated testimony of an accomplice, (Code,
§ 3600,) though such accomplice was also examined as a witness
before the grand jury.—Bird v. The State........................... 279

27. *Same.*—If a master gives money to his slave, and sends him
into a grocery to buy liquor, while he himself waits without to
see whether the liquor is furnished to the slave, he cannot be
considered as an *accomplice* of the seller, within the meaning of
the statute (Code, § 3600) which forbids a conviction on the un-
corroborated testimony of an accomplice.—Harrington v. The
State ........................................................................... 236

28. *Charge on sufficiency of circumstantial evidence.*—A charge to
the jury, instructing them that they could not lawfully convict
the prisoner, "if, upon all the evidence, they believed that the
probabilities of his guilt were as high as ten thousand to one
against his innocence,"—held to have been properly refused,

CRIMINAL LAW—continued.

because the record did not show that the evidence was confined to facts wholly inconclusive in their tendency; and the court added. "It may be doubted, indeed, whether the charge, in the form in which it was asked, would not, in any case, be more calculated to confuse, than to enlighten the jury................. 236

29. *Charge on sufficiency of evidence.*—A charge to the jury, instructing them that they must find the prisoner not guilty, "unless the evidence against him was such as to exclude to a moral certainty every supposition (or hypothesis) but that of his guilt," asserts a correct legal proposition, and ought to be given at the request of the prisoner.—Mose v. The State......... 211

30. *Same.*—But a charge which asserts that he is entitled to an acquittal, " unless the evidence against him was such as to exclude to a moral certainty every *possible* hypothesis but that of his guilt," is erroneous............................................... 211

31. *Charge on weight of evidence as compared with evidence in report'd case.*—Under an indictment charging a man and woman w . living together in adultery, the defendant's counsel read to the jury the reported case of *Mosser v. Mosser,* (29 Ala. 313,) in which the evidence was held insufficient to establish the fact of adultery; and asked the court to charge the jury, "that, unless they believed the facts of the case at bar were stronger and more conclusive of guilt than the facts in that case, the defendant ought to be acquitted,"—*held,* that the charge was properly refused.—Blackman v. The State............................ 295

32. *Charge ignoring proof of venue.*—A charge to the jury, instructing them that, on a hypothetical state of facts, not including proof of the venue, the prisoner " would be guilty as charged," is erroneous, and will work a reversal of the judgment of conviction, although the record shows that it was given " among other charges."—Henry v. The State......................... 268

See, also, Corporations, 4, 5.

CUSTOM.

1. *As to employment of hired slave.*—In an action by the owner, against the sub-bailee of the hirer, to recover damages for the loss of a slave, who was accidentally killed while assisting to raise a gin-house on the defendant's plantation, (the contract of hiring being general in its term,) although it may be competent for the defendant to prove that prudent masters are generally in the habit of employing their own slaves in that service when necessary, he cannot prove a local custom among planters to send their own and their hired slaves to assist their neighbors in raising gin-houses.—Jones v. Fort................................. 449

DAMAGES.

1. *For breach of special contract.*—Under a contract by which the plaintiff agreed to let the defendants have all the pine timber on

DAMAGES—CONTINUED.

his lands that was suitable for good lumber, and the defendants agreed to saw the same into lumber and sell it as soon as they could, to saw no other lumber until it was done, and to pay the plaintiff, annually, in money, one-fifth of the gross proceeds of the lumber sold and collected by them,—but one action lies for the defendants' failure and refusal to saw all the timber on the plaintiff's land; in which, although the time of performance may not then have elapsed, he is entitled to recover damages for the continued and prospective failure of performance, to be assessed upon the basis of value at the time of the breach ; and the measure of his recovery is the profits which would have accrued to him from the defendants' performance of their contract, to be ascertained by deducting the value of the timber left unsawed from one-fifth the value of the timber which it would have made.—Fail & Miles v. McRee............................ . 61

2. *For breach of warranty of soundness of slave.*—In an action to recover damages for a breach of warranty of the soundness of a slave, the right to recover the reasonable charges of the physicians who have attended the slave, does not depend upon the fact that they have been paid.—Kelly v. Cunningham ......... 78

DEEDS.

1. *Destruction of deed.*—The destruction of a deed, by or with the consent of the grantee, does not re-invest the grantor with the legal title to the premises conveyed.—Gimon v. Davis............. 589

2. *Constructive notice of mortgage and unregistered deed.*— The registration of a mortgage is constructive notice only to those who hold under the mortgagor, (correcting *dictum* in *Center v. P. & M. Bank*, 22 Ala. 743 ;) but, if the mortgagor, having voluntarily destroyed an unregistered deed to himself, and procured the execution of a deed by his vendor to a trustee for his wife, joins with his wife and the trustee in a conveyance to a purchaser, the registration of the mortgage charges the purchaser with constructive notice of such unregistered deed, and he cannot successfully defend an action at law by one claiming under a subsequent purchase at execution sale against the mortgagor.. 589

3. *Validity of deed of trust for benefit of preferred creditors.*—A deed of trust, made by a debtor in failing circumstances, while actions at law were pending against him, and only a few days before the rendition of judgments ; conveying his stock of merchandise, store-house and residence, which constituted the bulk of his visible property, to a trustee for the benefit of certain *bona-fide* creditors ; authorizing the trustee to sell the goods " at either public auction or private sale, as in his judgment may be best calculated to bring the largest sum of money ;" and providing that the proceeds of the sale of the property, after payment in full of the secured debts, together with the costs and

DEEDS—continued.

charges attending the execution of the trust, should be paid over to the grantor or his order, (which deed was declared by this court, on a former appeal. not to be fraudulent and void on its face,)—held not fraudulent in fact, on proof that the trustee sold the goods at retail, and mostly on credit till the end of the current year ; that the grantor afterwards paid some of the secured debts with funds not conveyed by the deed ; and that he declared a few days after the execution of the deed, but not in the presence of the beneficiaries, that his object in executing it was "to keep the executions out of his house."—Stetson & Co. v. Miller........................................................ 642

4. *Difference between deed of trust and general assignment.*—A deed of trust, executed by a debtor in failing circumstances, and conveying the bulk of his visible property to a trustee for the benefit of certain preferred creditors, cannot be held a general assignment, (Code, § 1556,) when it appears that the grantor had also notes and accounts due him, of considerable value, not conveyed by the deed.

5. *Deed of gift to woman "and heirs of her body."*—Under a deed of gift, by which the grantor, after reciting his wish to make permanent provision for an unmarried daughter and her children, conveyed certain slaves to a trustee, "for the sole use of my [his] said daughter Prudence and the heirs of her body forever ; but, in case the said Prudence shall die without an heir, then the said negroes, together with their increase, to return to my estate, to be equally divided between her brothers and sisters,"— *held*, that the interest of the daughter, whatever it might be, terminated at her death, and that the children then took the absolute property as remainder-men.—Williams v. McConico....   22

6. *Same.*—A deed of gift, by which slaves are conveyed to a trustee, "for the sole and separate use and benefit, and for the support and maintenance," of a married woman "and the heirs of her body, free from and uncontrolled by her said husband, and to be in no manner subject to or liable for his debts," confers upon her the absolute equitable interest in the slaves, and gives her children no estate whatever, either jointly with her, or as remainder-men.—Young v. Kinnebrew........................   67

7. *Same.*—A deed of gift, by which slaves and other personal property are conveyed to a trustee, in trust for the separate use and benefit of the grantor's daughter, then a married woman having children, "and the heirs of her body now begotten and hereafter to be begotten," free from the control, debts and liabilities of her husband ; with a further stipulation, that the trustee should permit the daughter to have the possession and control of such portion of the property "as shall and may be necessary for the welfare and comfort of her and her children," but should have power, at his discretion, to take the property into his own possession, "and so to employ and manage the same

DEEDS—CONTINUED.

as shall be to the true interest and benefit of her and her children,"—confers upon the daughter's children, who were living when the deed was executed, an equal and joint interest with their mother, subject to diminution by the subsequent birth of other children.—Robertson & Pettibone v. Johnston.... 197

8. *Gift to " children " held not to include grand-children.*—Under a deed of gift by which slaves are conveyed to a trustee, in trust for the sole and separate use of the grantor's married daughter during coverture, and, " upon the dissolution of said marriage," to be conveyed " to the present and future children, the offspring of said marriage, that may be living at the time of the happening of said dissolution of marriage,"—grand-children, whose parent was living at the time the deed was executed, but died before the dissolution of the said marriage, take no interest.—McGuire v. Westmoreland ................................ 600

DEPOSITIONS.

1. *Objection to responsiveness of answer.*—An objection to a part of a deposition, on the ground that it is not responsive to any interrogatory, cannot be made for the first time during the trial. Clement v. Cureton ........................ ............... 120

2. *Indefinite objection.*—A motion to suppress a deposition, " because the witness did not answer material portions of the 3d, 4th, and 5th cross-interrogatories," is too general and indefinite.—Howard v. Coleman................................ 721

DETINUE.

1. *Liability of sureties on detinue bond.*—There is no statute in this State, authorizing a summary judgment for costs against the sureties on a detinue bond, jointly with their principal, on his dismissal of the suit.—Garrett & Brooks v. Fuller............. 179

DIVORCE.

1. *Proof of adultery.*—To establish the charge of adultery by circumstantial evidence, the circumstances proved must be such as would lead the guarded discretion of a reasonable and just man to the conclusion that the crime had been committed; but the fact that the husband, without justifiable cause, voluntarily abandons his wife's bed within a year after their marriage, lends additional weight to suspicious circumstances against him, and tends to give them an unfavorable construction. Tested by these rules, the evidence in this case is sufficient to prove adultery on the part of the husband.—Jeter v. Jeter. ......................................... 391

2. *Alimony; how decreed.*—When a decree of divorce *a vinculo matrimonii* is rendered in favor of the wife, the statute (Code, § 1971) authorizes the chancellor to allow her a sum of money in gross by way of permanent alimony................................ 391

DIVORCE—CONTINUED.

3. *Amount of alimony.*—In determining the amount of perma-
nent alimony to be allowed to the wife, when a divorce is
granted to her on account of the husband's adultery, her own
conduct is a proper matter for consideration, (Code, § 1972;)
but the mere fact that, after her abandonment by her husband,
she spoke of him and of her former engagement to be mar-
ried to another man in an indiscreet and improper manner,
does not justify the denial of a liberal allowance to her ........ 391

4. *Same.*—An allowance of $20,000 to the wife, as permanent ali-
mony, where the value of the husband's estate is between
$40,000 and $50,000, would, ordinarily, be excessive; but, under
the special circumstances of this case—it appearing that the
husband had only two children, the elder of whom was a man
thirty years old, for whom he had already made liberal pro-
vision, while he disowned the younger, who was the only child
of the complainant—is not unreasonable............................ 391

5. *Estimate of wife's statutory separate estate in determining amount
of permanent alimony.*—After the delivery of the opinion in
this case. affirming the chancellor's decree on the merits, but
remanding the cause, in order that a reference to the master
might be made to ascertain the amount of compensation to be
allowed to the complainant's solicitors, the parties compromised
the matters in controversy between them; and after the full
execution of the agreement, by which the appellant obtained
some advantages to which he was not entitled under the de-
cree, his counsel having called the attention of the court to
the fact. not before noticed, that the wife was shown by the
record to possess a statutory separate estate, the value of which
did not appear to have been shown in any manner to the chan-
cellor, or to have been estimated by him in determining the
amount of her permanent alimony,—*held*, that the decision in
the cause, under these circumstances, should not be considered
as settling the rule, that an allowance out of the husband's
estate, as permanent alimony to the wife, can be sustained on
appeal, where the wife has a statutory separate estate, unless
it appears that the value of that estate was shown to the chan-
cellor, either by the evidence in the cause, or by the report of
the master under a reference. (A. J. WALKER, C. J., *dissenting*,
held, that in view of the great disparity between the estates of
the parties, as disclosed by the record, the appellate court
should take judicial notice of the fact that the wife's separate
estate was not sufficient for her maintenance.).............. 391

6. *Alimony pendente lite.*—An order for the allowance of tempo-
rary alimony, though usually made at an early stage of the
cause, and on a reference to the master, may be made on the
final hearing, without an order of reference; the allowance is
not restricted to a sum sufficient to provide for the wife the
mere necessaries of life, but depends on the circumstances

DIVORCE—CONTINUED.

and social position of the parties; and the decision of the
chancellor will not be reversed by the appellate court, unless
the record presents a strong and plain case of error............. 391

7. *Allowance of solicitors' fees.*—An allowance for the fees of
the wife's solicitors must be restricted to the actual reasonable
value of their services, and should not be made without a refer-
ence to the master, or proof as to the proper amount............ 391

DOWER.

1. *What law governs right of dower.*—Authorities cited on the
question, whether the widow's right of dower is governed by
the law which was of force at the time of the husband's death,
. or by that which was in existence at the time of the marriage
and acquisition of the land.—Harrison v. Boyd............. 203

2. *Same.*—The widow's right of dower is governed by the law
which was of force at the time of the husband's death, and
not by that which was in existence at the time of the mar-
riage, or of the husband's acquisition of the land.—Boyd v.
Harrison.................................................................... 533

3. *When widow is entitled to dower.*—Under the Code, (§ 1354,)
the widow is not entitled to dower in lands which were pur-
chased by her husband at an administrator's sale, but of which
he never received any conveyance, not having made full pay-
ment of the purchase-money at the time of his death....203, 533

4. *When widow is entitled to rents of dwelling-house.*—The widow's
statutory right to retain possession of the dwelling-house in
which her husband most usually resided next before his death,
with the adjacent plantation, (Code, §§ 1259, 1354, 1367,) and
her consequent right to recover the rents thereof, attach only
to the premises of which she is dowable....................... 203

ENTRY AND DETAINER—FORCIBLE AND UNLAWFUL.

1. *Variance between summons and complaint.*—In an action of forci-
ble entry and detainer, removed by appeal from a justice's
court into the circuit court, (Code, § 2864,) the cause being
triable *de novo*, the complaint should not be rejected, on ac-
count of a variance between it and the cause of action en-
dorsed on the summons issued by the justice.—Van Aspen v.
Townsend................................................................ 582

ERROR AND APPEAL.

I. WHEN APPEAL LIES.

1. *From decision on petition for hab. corp.*—An appeal does not lie
to the supreme court, from the decision of a probate judge on
a petition for *habeas corpus.*—(Code, §§ 3016, 3710-47.)—Guilford
v. Hicks....................................................................... 95

ERROR AND APPEAL—CONTINUED.

2. *From order for mandamus.*—An appeal lies to the supreme court, from an order of the circuit court granting a *mandamus* against the mayor of a city.—Withers v. The State................ 252

II. PRACTICE.

3. *Amendment of judgment pending appeal.*—When a judgment is amended *nunc pro tunc* during the pendency of an appeal, and the amendment brought up on *certiorari* previously sued out, the amended judgment is properly before the appellate court. Dow v. Whitman & Ousley............................................. 604

4. *What is revisable.*—In civil causes, the appellate court will not notice any assignment of error which is not insisted on in the argument of the appellant's counsel.—Howard v. Coleman...... 721

5. *Same.*—On appeal from a decree in chancery, dissolving an injunction on the denials of the answer, without passing on the equity of the bill, the appellate court will only consider the single question decided by the chancellor.—McLaughlin v. McLaughlin.......................................................... 145

6. *Same.*—On appeal by the complainants from a final decree in chancery in their favor, assigning as error the rules adopted by the chancellor for the statement of the accounts between the parties, the appellate court will not, at the instance of the appellees, consider the equity of the bill.—Bobe's Heirs v. Stickney................................................. 482

7. *Same.*—On appeal from a final decree in chancery, granting to the wife a divorce *a vinculo matrimonii*, and ordering the husband to pay her a specified sum as temporary alimony, and an additional sum to her solicitors as compensation for their services, the order for the payment of the solicitors' fees is revisable; but, on the question whether the order for the payment of temporary alimony is revisable, the majority of the court express no opinion. (A. J. WALKER, C. J., *dissenting*, held that neither portion of the order for the payment of money was revisable.)—Jeter v. Jeter...................... 391

8. *Conclusiveness of judicial decision.*—A decision of the supreme court is the law of the case in which it is pronounced, and its correctness cannot be questioned on a second appeal.—Roundtree v. Turner...... ........................................ 555

9. *Same.*—After a judgment of the probate court has been twice reversed on error, and the cause remanded for further proceedings, the appellate court will not, on a third appeal, consider the question whether the probate court had jurisdiction of the proceeding; that question having been implicity involved in the former decision, although the point was not then directly made.—Mims v. Sturdevant ......................... 636

10. *Same.*—Under a bill filed by a creditor, against the personal representative and several legatees of his deceased debtor, seeking satisfaction of his debt out of the property in the

ERROR AND APPEAL—CONTINUED.

hands of the legatees, the guardian *ad litem* of the infant lega-
tees put in a formal answer, denying all the allegations of the
bill; one of which allegations was, that the testator was in-
·debted to the complainant. The only evidence of indebted-
ness adduced by the complainant was a judgment against the
testator's executor, rendered after the executor's assent to the
defendants' legacies. On writ of error from the chancellor's
decree, one of the assignments of error by the defendants was,
the rendition of a final decree for the complainant without any
proof of the testator's indebtedness to him. In the opinion
of the supreme court it was said, "The debt against the testa-
tor is well established." *Held*, on a second appeal by the de-
fendants, after the infants had attained their majority, and had
put in an answer requiring proof of the testator's indebtedness
to the complainant, that this opinion precluded inquiry into
the legal question, whether a judgment against the executor,
rendered after his assent to the defendants' legacies, was, as
against them, evidence of the testator's indebtedness to the
complainant.—Sanders v. Godley's Adm'r......... ........  50

11. *Error without injury.*—The correctness of a charge to the
jury, which, however erroneous, could not have prejudiced the
appellant, will not be revised, at his instance, by the appellate
court.—Williams & Smart v. Carpenter & Co...............  9

12. *Same.*—Where the defendant's title is affirmatively shown to
have been wholly insufficient to overturn the plaintiff's *prima-
facie* case, the appellate court will not, at his instance, inquire
into the correctness of any of the rulings of the primary court
adverse to him.—McTyer v. McDowell....................  39

13. *Same.*—The admission of evidence, which, though illegal, is
simply redundant or superfluous, is, at most, error without in-
jury.—Bishop v. Blair...................................  80

14. *Same.*—The admission of evidence to prove a fact which is
admitted by the pleadings, is, at most, error without injury.
Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid..........  703

15. *Same.*—The admission of irrelevant evidence, in rebuttal of
irrelevant evidence, is, at most, error without injury.—Wat-
son v. Tool & Nicholson..................................  13

16. *Same.*—The wrongful sustaining of a demurrer to a special
plea, when the defendant might have had the benefit of the
same defense under his other pleas, is, at most, error without
injury.—Powell v. Asten..................................  140

17. *Same.*—The appellate court will not inquire into the legality
of a question propounded to a witness, when the answer there-
to elicited no illegal evidence.—Clement v. Cureton.........  120

18. *Same.*—The admission of legal evidence, for an illegal pur-
pose, is not a reversible error: it is the duty of the party to
limit its effect by asking an appropriate charge to the jury.
Robinson's Adm'rs v. Allison .............................  525

ERROR AND APPEAL—continued.

19. *Practice on error in appeal or certiorari cases.*—In appeal and certiorari cases, which, when the amount in controversy is less than $20, are tried by the court without the intervention of a jury, (Code, § 2369,) the judgment of the circuit court will not be reversed on error, unless its decision on the facts is shown to be manifestly wrong.—Dane v. Mayor of Mobile... 304

20. *Presumption in favor of regularity of pleadings.*—When a demurrer has been sustained by the primary court, the appellate court will presume, unless the record affirmatively shows the contrary, that the causes of demurrer were specified, as required by the statute.—Newsom v. Huey............................. 37

21. *Presumption in favor of judgment.*—Where the rulings and judgment of the circuit court can be sustained under the provisions of the Code, but not under the former law, the appellate court will presume, unless the record repels such presumption, that the facts of the case brought it within the provisions of the Code.—Harrison v. Boyd............................. 203

22. *Same.*—On appeal from a judgment of the circuit court, reversing a decree of the probate court,—by which decree an administrator was charged with interest on the money in his hands, although he made the statutory affidavit, (Code, § 1813:) if the record does not show, by bill of exceptions or otherwise, the evidence which was before the probate court, the appellate court will presume that the evidence justified its decision. Roundtree & Kirby v. Snodgrass............................. 185

23. *Same.*—In a case which was tried before a probate judge without the intervention of a jury, the appellate court wil presume, unless the contrary is affirmatively shown, that his decision was justified by the evidence.—Guilford v. Hicks .. 95

24. *Same.*—If the validity of an indictment, found at a special term of the city court of Mobile, depended upon the fact that the accused was in custody at the time it was found, and the record did not affirmatively show that he was not then in custody, the appellate court would presume, in favor of the judgment, that he was then in custody.—Harrington v. The State............................. 236

### III. Judgment.

25. *Judgment reversed in part, and rendered.*—A judgment for costs against the sureties on a detinue bond, jointly with their principal, will be reversed on error as to the sureties, and affirmed as to their principal.—Garrott & Brooks v. Fuller............ 179

26. *Remandment of cause on reversal.*—On the reversal of a judgment of the circuit court, rendered on demurrer to evidence, or on an agreed state of facts, the cause will be remanded. Tenn. and Coosa Railroad Co. v. Moore............................. 372

27. *Decree affirmed in part, and reversed and remanded in part.* The decree of the chancellor in this case, granting a divorce

ERROR AND APPEAL—continued.

to the wife, was reversed, and the cause remanded, as to the order making an allowance to the wife for her solicitors' fees, but was affirmed in every other respect; and the costs of the appeal were imposed on the appellant.—Jeter v. Jeter...... 391

28. *Judgment reversed and rendered.*—On appeal from a judgment against a garnishee, in a case removed from a justice's court by *certiorari*, an error in the amount of the judgment, which might have been corrected on motion in the circuit court, will be corrected by the appellate court, at the costs of the appellant.—Gould v. Meyer........................ 565

ESTATES OF DECEDENTS.

1. *Jurisdiction of probate court to sell real estate.*—The probate court has no jurisdiction to order the sale of lands, for the purpose of division among a decedent's heirs-at-law or devisees, when the decedent had, at the time of his death, no title whatever to the land, either legal or equitable.—Bishop v. Blair........................................................ 80

2. *Presentation of claim.*—In an action against executors, on a decree rendered against their testator in his life-time, (the statute of non-claim being pleaded,) a witness for plaintiff testified, that the defendants were informed of the nature and amount of the demand, and frequently admitted, within eighteen months after the grant of letters testamentary, "that the plaintiff was claiming said decree of said estate, but said they expected to be able to prove it had been paid;" and that on a partial settlement with the probate court, made within eighteen months after the grant of their letters, they reserved money to pay said decree, provided they should be compelled to pay it,—*held*, that this evidence, if believed by the jury, might justify them in finding that the claim was duly present ed to the executors.—Frazier's Executors v. Praytor.......... 691

See, also, CHANCERY, 7–9.

ESTOPPEL.

1. *Estoppel en pais.*—An estoppel resting in parol can have no effect, at law, upon the title to land.—Gimon v. Davis............ 589

2. *Estoppel by record.*—In proceedings before the probate court, on the petition of a widow, for the allotment of her dower, the mere fact that the husband's administrator is named as a defendant in the marginal statement of the parties' names, and a decree for costs rendered against him, is not sufficient to show that he was a party; consequently, the record is not admissible evidence against him, in a subsequent action by the widow for the recovery of rents, and does not estop him from denying the husband's seizin of the lands.—Harrison v. Boyd.......................................... 533

ESTOPPEL---CONTINUED.

3. *By record, and by acts en pais.*—A decree of sale by the probate court, for the purpose of division among heirs or devisees, does not operate an estoppel against a party thereto, when the proceedings are void for want of jurisdiction in the court; nor is the party estopped, at law, from disputing the title of the purchaser, by the fact that he stood by and permitted the sale, without objection, afterwards refused to let the purchaser surrender his purchase, received a part of the purchase-money in distribution, and subsequently bought from the purchaser a right of way over the land.—Bishop v. Blair .................. 80

4. *Against tenant from denying landlord's title.*—An order of the commissioners' court, granting to the defendant a private right of way through the plaintiff's lands, does not estop the defendant, when sued for the commission of a trespass on lands outside the track of the private road, from disputing the plaintiff's title to the land ......................................................... 80

5. *Same.*—The acceptance of a lease from a stranger, by a party who is in possession of land, if done "in ignorance of his rights," does not estop him from afterwards impeaching the validity of such stranger's title.—Cain v. Gimon ................. 168

6. *Estoppel against administrator from denying intestate's seizin.*—In an action by the widow, against the husband's administrator, to recover the rents of the dwelling-house in which the husband most usually resided next before his death, (Code, § 1359,) the defendant is not estopped from denying that his intestate had such title to the premises as is necessary to support the action.—Harrison v. Boyd ............................................... 533

EVIDENCE.

## I. ADMISSIBILITY AND RELEVANCY.

1. *Relevancy of evidence rebutting fraud in execution of conveyance.* In trespass against a sheriff, for levying an attachment on a stock of goods claimed by the plaintiffs under a conveyance from the defendant in attachment, which conveyance is impeached for fraud by the defendant; the defendant having proved that, about the time of the execution of the conveyance for the stock of goods, the debtor also conveyed all his other property to the plaintiffs, taking their notes for the purchase-money, and having produced other evidence of fraud in the execution of the conveyances, it is competent for the plaintiffs, in rebuttal, to prove that the proceeds of these notes were used by him in payment of pre-existing *bona-fide* debts, and that the plaintiffs had paid the debts which, by their contract with him, they had bound themselves to pay; and the fact that these payments were made after the levy of the attachment, and after the institution of the suit, does not affect the admissibility of the evidence.—Watson v. Tool & Nicholson 13

EVIDENCE—CONTINUED.

2. *Relevancy of evidence to prove performance.*—In an action to recover damages for a breach of one of the stipulations of a contract, evidence showing the defendant's performance of another distinct stipulation is irrelevant.—Fail & Miles v. McRee............................................................... 61

3. *Relevancy of evidence distinguished from sufficiency.*—In trespass *quare clausum fregit*, the evidence of a witness who testifies to a trespass committed by defendant on lands belonging to plaintiff, but cannot identify those lands as the lands described in the complaint, cannot be excluded from the jury on motion. Pike v. Elliott..................................................... 69

4. *Murder; relevancy of prisoner's subsequent acts and declarations as evidence.*—Under an indictment for murder, it having been shown that the prisoner and the deceased, while on a drunken frolic, had an altercation together, which resulted in a fight between them; that the prisoner struck the deceased with a brick-bat during the fight, and that the latter died from the effects of the blow during the following night,—it is competent for the State to prove, " that about a half-hour after the blow had been given, and after the fight was entirely over, and after the parties had left the place where the fight occurred, the prisoner went to the place where the deceased was, with a pistol in his hand, and said he had come to kill the damned old rascal."—McManus v. The State........................................................ 285

5. *Relevancy of evidence corroborating confessions of prisoner and dying declarations of deceased.*—The fact that a buckshot, of the size admitted by the prisoner to have been used by him in shooting the deceased, was found a month afterwards, lodged in a tree near the scene of the murder, within the range of a gun discharged under the circumstances detailed in the dying declarations of the deceased and in the confessions of the prisoner, is relevant evidence, as corroborating those declarations and confessions.—Mose v. The State......................... 211

6. *Relevancy of evidence to prove adultery.*—Under an indictment against a married man for living in adultery with an unmarried woman, it having been proved that the defendant frequently visited, by night, the house in which the woman lived, and was seen lying in bed with her in her chamber, proof of the woman's general reputation for a want of chastity is relevant and admissible for the prosecution.—Blackman v. The State............... 295

7. *Admissibility of evidence rebutting negligence.*—Under a count in trover, to recover damages for the loss of a slave, who was accidentally killed while employed in raising a gin-house for the defendant; the plaintiff having adduced evidence, tending to show that, on account of the weather and the condition of the timbers, it was imprudent to attempt the work on that day, it is competent for the defendant to prove, in rebuttal,

EVIDENCE—CONTINUED.

that the work was undertaken after consultation among the persons present as to the propriety and safety of so doing. Jones v. Fort............................................. ......... 449

8. *Same.*—In an action by the owner, against the hirer of a slave, to recover damages for the defendant's negligence and want of care in failing to furnish proper medical attendance to the slave while sick ; it having been proved that, by the terms of the contract of hiring, plaintiff's agent, by whom the contract was made, assumed to pay for necessary medical services during the term, and had authority to make such contract,—evidence showing that the defendant informed the agent of the slave's sickness, and requested him to call in a physician, and that the agent refused to do so, and declared himself satisfied with the defendant's personal attendance on the slave, is relevant and admissible for the defendant.—Howard v. Coleman. 721

9. *Same.*—In such action, the plaintiff having proved that the slave died of an infectious disease, contracted at the defendant's house during the term; and having introduced evidence tending to show that the defendant was unnecessarily absent from home during the slave's sickness, and neglected to give him proper care and attention while sick,—it is competent for the defendant to prove, in rebuttal, that the business in which he was engaged required his absence from home; that the nature of his business was known to the plaintiff when the contract of hiring was made, and that he contracted the disease of which the slave died while thus absent from home on business....... ... ....................................... 721

10. *Proof of unsoundness of mind.*—The fact that a person makes one or more improvident bargains, or is generally unthrifty or unsuccessful in his business, does not, *per se*, prove him to be *non compos mentis ;* but it is admissible evidence, in connection with facts and circumstances tending to show mental unsoundness.—*In re* Carmichael............ ......... .................. 514

11. *Same.*—On the trial of an inquisition of lunacy, a witness cannot be asked, "whether his brother did not control the defendant and his business ;" nor, "whether he is not going down hill generally;" nor, "whether his appearance was that of a man of sound or unsound mind."................. 514

12. *Rebutting evidence of indebtedness outside of demand sued on.* Defendants having adduced evidence, under the plea of payment, showing sundry payments made by their intestate to plaintiff during the period covered by the account sued on ; and there being no evidence that the intestate had directed the application of these payments to any particular debt, or that plaintiff had made any application,—it is competent for the plaintiff to prove, in rebuttal, that the intestate owed him other debts, to which these payments might be applied by himself or the court.—Robinson v. Allison................ 525

EVIDENCE—CONTINUED.

13. *Admissibility of evidence under bill of particulars.*—In an action on an account for work and labor done, plaintiff's bill of particulars (Code, § 2238) containing an item for "work done on granary;" and the evidence showing that the granary had a shed on each side, one of which contained a threshing-machine, "the machinery consisting of a shaft and cog-wheels to move it, which were made fast to the building, like the running-gear of a gin," and which were put up by plaintiff at the same time with the granary,—*held,* that under the liberal rules which govern the construction of bills of particulars, and in the absence of a special showing that the evidence operated a surprise, there was no error in the admission of evidence showing the work performed by plaintiff in putting up said machinery, and the value thereof ........................... 525

14. *Relevancy of evidence on question of title to slave.*—On the trial of an issue between an executor and some of the legatees under the will, the issue being whether the slave in controversy belonged to the executor individually or to the testator, the fact that the testator "was not in the habit of buying property without first seeing it," is relevant and admissible for the executor.—Mims v. Sturdevant..... ..................... 636

15. *Same.*—In such case, the legatees having proved that the slave was employed on the testator's premises, the executor may prove, in rebuttal, that he permitted his slaves to work on the testator's premises. ............................... 636

16. *Admissibility of decision of presiding judge on former trial.*—On the trial of an issue before the probate court, the opinion and decision of the presiding judge on a former trial is not admissible evidence......................................... 636

17. *Irrelevant evidence in rebuttal.*—The admission of irrelevant evidence, in rebuttal of irrelevant evidence, is, at most, error without injury.—Watson v. Tool & Nicholson............... 13

18. *Redundant evidence.*—The admission of evidence, which, though illegal, is simply redundant or superfluous, is, at most, error without injury.—Bishop v. Blair...................... 80

19. *Same.*—The admission of evidence to prove a fact which is admitted by the pleadings, is, at most, error without injury. Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid........... 703

## II. ADMISSIONS; DECLARATIONS; HEARSAY; RES GESTÆ.

20. *Admissibility of confessions.*—Where a witness testifies, that he went to see the prisoner, after his arrest, at the instance and request of the latter, and found him confined and chained; that in reply to an inquiry why he had sent for him, the prisoner referred to an informal preliminary examination, at which the witness had assisted, admitted that his denial of guilt on that occasion was false, and proceeded to confess his guilt; and

EVIDENCE—CONTINUED.

that he did not know of any promises or threats previously made to the prisoner,—this is sufficient, *prima facie,* to show that the confessions were voluntary, and to authorize their admission as evidence before the jury.—Mose v. The State...... 211

21. *Same.*—The confessions of the prisoner in this case, who was a slave, held to have been properly received in evidence under the facts disclosed in the record, notwithstanding promises of favor made by his master several weeks previously, and threats of violence by third persons on the day before such confessions were made.................................... .... ..... 211

22. *Admissibility of party's own declarations..*—The declarations of a party, not constituting a part of the *res gestæ,* are not competent evidence in his favor.—Pike v. Elliott....................... .... 69

23. *Admissibility of declarations of sick slave.*—The declarations of a slave whose soundness is in controversy, made to a person who was not a physician, to the effect "that he had the dropsy, that it was an old disease, and had been on him a long time," are not competent evidence.—Kelly v. Cunningham......... 78

24. *Whole conversation admissible, when part has been proved.*—When a part of a conversation has been proved by one party, the other has a right to call for all that was said at the time relating to the same subject-matter.—Jones v. Fort.................. 449

25. *Admissibility of hearsay to prove marriage.*—In a statutory action for the use of the wife of a person who has bet and lost money on a horse-race, (Code, §1563,) general reputation cannot be received, to prove that the beneficiary of the suit is the wife of the loser.—Davis v. Orme............. ............ 540

26. *Admissibility of evidence of absent witness on former trial.*—The permanent absence of a witness from the State authorizes the admission of his testimony as given on a former trial of the cause.—Mims v. Sturdevant.......... ...... ...... .............. 636

27. *Admissibility of husband's declarations as evidence against wife.* In such action, the declarations of the husband, made after the bet was concluded, but before the race was run, to the effect that he had no interest in the wager, are competent evidence against the plaintiff................................... 540

28. *Admissibility of declarations qualifying and explaining receipt of money.*—The declarations of a party, made at the time of receiving money, are admissible evidence for him, for the purpose of showing that he did not receive the money as a payment in full of all demands.—Dillard v. Scruggs.................... 670

### III. BURDEN; WEIGHT, AND SUFFICIENCY.

29. *Burden of proof; failure of consideration of note.*—In an action on an unconditional promissory note, given for professional services to be rendered by the payee as an attorney-at-law, and payable on a day certain, the *onus* is not on the plaintiff to

EVIDENCE—CONTINUED.

prove performance of the stipulated services, but on the defendant to show a failure of performance; and proof of the fact that the attorney was absent at the first ensuing term of the court in which the cause was pending, and that the cause was compromised by the parties before the next term, without more, does not even tend to establish a failure of consideration.—Douglass v. Eason...................................................... 687

30. *Proof of execution of written instrument on which suit is founded.* In an action against a railroad company, on a certificate issued by its engineer for work done by a contractor, (which certificate is alleged to have been signed and issued by the engineer as the authorized agent of the corporation, and to have been transferred by the contractor to plaintiff;) there being no sworn plea, denying the execution of the certificate,—the instrument itself is evidence of the existence of the debt, (Code, §§ 2238, 2278–79,) and that it was made on sufficient consideration.—Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid................................... ................... ...... 703

31. *Proof of ownership of demand.*—If the action is brought by an assignee of the certificate, and there is no sworn plea denying the assignment, proof thereof is not required of the plaintiff ............................................................. 703

32. *Proof of execution of note.*—The issue in this case being, whether the *feme covert* defendant executed the promissory note which was sought to be charged upon her separate estate, and which purported to be signed by her, jointly with her husband; one witness expressing the opinion that her signature was genuine, while four other witnesses testified, that the handwriting, though closely resembling the defendant's, was not hers; and the evidence showing that, when the note was handed to the husband, and he was required to procure his wife's signature, he went with it towards the room occupied by himself and wife, and returned with her name signed to it,—*held*, that the evidence was not sufficient to overcome the sworn denial of the answer.—Starke v. Blackwell.................... 154

33. *Proof of note by recitals of mortgage.*—The recital of a note in a mortgage given to secure it, although it does not estop the mortgagor from denying the existence of the note as recited, is not sufficient to overcome his sworn denial of its existence in his answer to a bill in chancery.—O'Bannon v. Myers' Executors........................................................................... 551

34. *Weight of confessions as evidence.*—The *corpus delicti* being otherwise established, a conviction may be had on the prisoner's confessions alone, if free, voluntary, and satisfactorily proved.. 211

25. *Charge on sufficiency of evidence.*—A charge to the jury, instructing them that they must find the prisoner not guilty, "unless the evidence against him was such as to exclude to a

EVIDENCE—CONTINUED.

    moral certainty evory supposition (or hypothesis) but that of
his guilt," asserts a correct legal proposition, and ought to be
given at the request of the prisoner.—Mose v. The State......... 211

36. *Same.*—But a charge which asserts that he is entitled to an ac-
quittal, " unless the evidence against him was such as to exclude
to a moral certainty every *possible* hypothesis but that of his
guilt," is erroneous....................................................... 211

37. *Charge on sufficiency of circumstantial evidence.*—A charge to
the jury, instructing them that they could not lawfully convict
the prisoner, " if, upon all the evidence, they believed that the
probabilities of his guilt were as high as ten thousand to one
against his innocence,"—held to have been properly refused,
because the record did not show that the evidence was confined
to facts wholly inconclusive in their tendency ; and the court
added, " It may be doubted, indeed, whether the charge, in the
form in which it was asked, would not, in any case, be more
calculated to confuse, than to enlighten the jury................ 236

38. *Charge on weight of evidence as compared with evidence in re-
ported case.*—Under an indictment charging a man and woman
with living together in adultery, the defendant's counsel read to
the jury the reported case of *Mosser v. Mosser,* (29 Ala. 313,) in
which the evidence was held insufficient to establish the fact of
adultery; and asked the court to charge the jury, "that, unless
they believed the facts of the case at bar were stronger and
more conclusive of guilt than the facts in that case, the defend-
ant ought to be acquitted,"—*held,* that the charge was properly
refused.—Blackman v. The State........................... 295

### IV. OBJECTIONS.

39. *General objection.*—A general objection to evidence, a part of
which is admissible, may be overruled entirely.—Newsom v.
Huey ............................................................... 37

40. *Mode of objecting to evidence admissible against one defendant
only.*—When two persons are jointly indicted and tried, and
evidence is offered which is admissible against one of them
only, if the other wishes to avoid its effect as evidence against
him, he must ask an instruction to the jury limiting its effect,
instead of moving to exclude it altogether.—Blackman v. The
State ................................................... 295

### V. OPINION ; LEGAL CONCLUSION.

41. *Opinion of physician.*—A practicing physician, who states .
that, "having been requested to examine the defendant, in
order to test the condition of his mind, he met and conversed
with him, and noticed his general expression and appearance,
but had formed no settled opinion as to the depth of his
mind," may be asked whether he discovered any evidence of

EVIDENCE—CONTINUED.

unsoundness of mind, and may state his opinion on the question of sanity *vel non.—In re* Carmichael................................ 514

42. *Opinion of witness on question of sanity.*—On the question of sanity *vel non*, a witness who, though not a physician, has had an intimate acquaintance with the party, may give his opinion, in connection with the facts on which it is based; *secus*, as to one who has had a mere passing acquaintance, or brief and occasional interviews on general or indifferent subjects......... 514

43. *To what witness may testify.*—A witness cannot be asked, on the trial of an inquisition of lunacy, " whether, in his opinion, the defendant was capable of taking care of himself and managing his affairs."—*In re* Carmichael...................................... 616

44. *Same.* Nor can he be allowed to state "the *impression* that the defendant made on his mind."....... ...................... 514

45. *Same.*—A witness cannot be asked to state *why* another person did a particular act.—Clement v. Cureton...................... 120

## VI. PAROL AND WRITTEN.

46. *Admissibility of parol evidence, in aid of recognizance.*—In *sci. fa.* against bail, on a forfeited recognizance, the *capias* and bailbond may be connected with the pending indictment to which they relate, by the parol testimony of the sheriff and clerk, notwithstanding a variance in the description of the offense. Welch v. The State........................................ 277

47. *Same, in aid of record to identify pending cause.*—On motion to strike from the trial docket a case in which a new trial had been granted at the last preceding term, the marginal statement of the parties' names, both in the entry of the motion on the motion docket, and in the entry of the order on the minutes, being erroneous, parol evidence is admissible to identify the case and correct the mistake.—*Ex parte* Nall............ 299

48. *Same, to vary writing.*—In an action against a railroad company, by the assignee of a certificate issued by its engineer to a contractor for work done on the road, proof of an oral agreement between the contractor and the engineer, to the effect that the certificate should be used in paying a debt due from the contractor to a stockholder, who was indebted to the railroad company, is not admissible for the defendant; because, if made before the issue and delivery of the certificate, and as an inducement to its issue, its effect is to vary the terms of the certificate.—Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid...................................................... 703

49. *Same, to complete defective memorandum of sale under statute of frauds.*—Parol evidence cannot be received to complete a defective memorandum of sale by an auctioneer, so as to avoid the effect of the statute of frauds.—Knox v. King............... 367

EVIDENCE—CONTINUED.

### VII. PARTIES.

50. *Proof of demand by plaintiff's own oath.*—Where the plaintiff proposes to establish his demand by his own oath, (Code, § 2313,) and swears positively to its correctness, the defendant's sworn denial of the facts, "upon the best of his knowledge and belief," is not sufficient to exclude the plaintiff's statement as evidence.—Fitzpatrick v. Hays.................................... 684

### VIII. PRIMARY AND SECONDARY.

51. *Predicate for introduction of secondary evidence.*—Secondary evidence of the contents of a vendor's title-bond, and of his several receipts for partial payments made by the purchaser, is admissible, on proof that said papers were last seen, after the purchaser's application for the benefit of the bankrupt act of 1841, on file with his other papers in the office of the assignee in bankruptcy; that said assignee afterwards absconded, and was removed from office, having never turned over to his successor the books and papers belonging to his office; and that the succeeding assignee, after diligent search in his office, could not find them, and could obtain no information concerning them from his predecessor, to whom he made several applications by letter.—Bobe's Heirs v. Stickney.............. 482

### IX. RECORDS AND JUDGMENTS.

52. *Admissibility of record as evidence.*—In detinue for slaves, by persons claiming as remainder-men under a deed of gift, against the representative of the husband of the first taker, a transcript from the records of the circuit court of the county in which the deed was recorded, showing the resignation of the trustee appointed by the deed, with the consent of the grantor and beneficiary, and the appointment of another trustee in his stead, is not admissible evidence for the plaintiffs, in connection with the proof of the death of the substituted trustee, to show that there is no legal title outstanding against them, when the identity of the names of the parties is the only evidence connecting the record with the slaves and deed in controversy, and it appears that the death of the trustee did not invest the plaintiffs with the legal title to the slaves.—Williams v. McConico............................. 22

53. *Same.*—In proceedings before the probate court, on the petition of a widow, for the allotment of her dower, the mere fact that the husband's administrator is named as a defendant in the marginal statement of the parties' names, and a decree for costs rendered against him, is not sufficient to show that he was a party; consequently, the record is not admissible evidence against him, in a subsequent action by the widow for the recovery of rents, and does not estop him from denying

EVIDENCE—CONTINUED.

the husband's seizin of the lands.—Harrison v. Boyd ........ 533

54. *Admissibility of judgment for or against purchaser, as evidence for or against vendor.*—In an action of trespass against a sheriff, for seizing and selling plaintiff's property under execution against his vendor, a judgment for or against the plaintiff would not be admissible evidence for or against his vendor, in another action; consequently, under section 2302 of the Code, his vendor is a competent witness for the plaintiff.—Sawyer v. Ware.................................................... ... 675

55. *Conclusiveness of judgment.*—A judgment at law on a promissory note, given for the purchase-money of land, is conclusive between the parties as to the amount then due on the note; and the defendant, when subsequently seeking a specific performance of the contract in equity, cannot claim the benefit of payments which ought to have been credited on the note. Bobe's Heirs v. Stickney ................................. 482

EXECUTION.

1. *Supersedeas; description of execution.*—In the description of an execution in a *supersedeas,* the only essential particulars are, the parties, the amount required to be made, the court from which, and the time when it was issued. When the sheriff is ruled ·for failing to make the money on the execution, and relies on the *supersedeas* proceedings as a defense, a defective description of the execution in the *supersedeas* may be aided by reference to the petition, fiat and bond to which it refers; and the execution which was superseded being thus identified with the execution on which the motion is founded, the plaintiff cannot take advantage of immaterial discrepancies between it and his own description of it in his motion.—Walker v. Hunter............................................................. 125

2. *When title passes to purchaser, as against execution creditor of vendor.*—Under a verbal contract for the sale of an article to be manufactured by the vendor, if the contract is within the statute of frauds, the title does not pass to the purchaser until there has been a delivery to him; and if a valid execution against the vendor is in the hands of the sheriff during the interval between the manufacture and the delivery of the article, the lien of the execution is superior to the title of the purchaser.—Sawyer v. Ware.................................... 675

EXECUTORS AND ADMINISTRATORS.

1. *Jurisdiction of probate court to grant administration.*—The jurisdiction of the probate court, in the matter of the grant of letters testamentary, and of administration, is original, general, and unlimited; and hence every reasonable presumption will be indulged in favor of its orders, when collaterally assailed. Gray's Adm'rs v. Cruise...................................... 559

EXECUTORS AND ADMINISTRATORS—continued.

2. *Validity of grant of administration de bonis non.*—A grant of letters of administration *de bonis non*, when there is in fact no vacancy in the administration, will be held void, even in a collateral proceeding; but it will not be held void, in a collateral proceeding, merely because it fails to show the appointment and removal, resignation, or death, of the administrator in chief; and where the record shows the regular appointment of the administrator in chief, and that on a subsequent day it was ordered that his "resignation be received and recorded," and that letters of administration *de bonis non* were on the same day granted to another, it will be presumed that the resignation was of the office of administrator, and was in writing as required by the statute.............................................. 559

3. *Same.*—Where a transcript from the records of the probate court, purporting to be "a full, true and complete exemplification of the records and files of said court touching the administration" of a decedent's estate, shows a grant of administration *de bonis non*, on the condition that the party execute and file a bond, but does not show that the bond was executed and filed as required by the order, it will be presumed in favor of the validity of a subsequent grant of administration, when collaterally assailed, that the party failed to comply with the condition.................................................. 559

4. *Assent to legacy.*—Where a life-estate in the bulk of the testator's property, consisting of lands, slaves, &c., is given to his widow, who is also appointed executrix; and who afterwards procures the probate of the will, and qualifies as administratrix with the will annexed,—her continuous use of the property during her life, in accordance with the provisions of the will, is an implied assent to her own legacy, which involves an assent to the legacy to the remainder-men.—Camp v. Coleman . . 163

5. *Liability of administrator for interest; presumption in favor of judgment.*—On appeal from a judgment of the circuit court, reversing a decree of the probate court,—by which decree an administrator was charged with interest on the money in his hands, although he made the statutory affidavit, (Code, § 1813;) if the record does not show, by bill of exceptions or otherwise, the evidence which was before the probate court, the appellate court will presume that the evidence justified its decision. Roundtree & Kirby v. Snodgrass......... ............................. 185

6. *Administrator's authority to rent lands.*—Under the provisions of the Code, (§§ 1737, 1751,) the administrator of an insolvent estate may rent out the lands belonging to the estate, and receive and hold the rents as assets; consequently, the heir cannot maintain an action against him to recover such rents. Boynton v. McEwen...................................................... 348

7. *Payment of debts by administrator of insolvent estate.*—In paying debts, not of a preferred class, before the expiration of

EXECUTORS AND ADMINISTRATORS—CONTINUED.

eighteen months from the grant of administration, an administrator acts at his peril: if the estate afterwards proves to be insolvent, he cannot charge it with the amount so paid by him, though he may be substituted for the creditors so paid, and receive the distributive share of the assets to which they would have been entitled; and this relief he may obtain in the probate court, without resorting to chancery.—McNeill v. McNeill 109

8. *Satisfaction of mortgage by administrator.*—The administrator of an insolvent estate ·has authority to discharge an incumbrance on property belonging to it, whenever the interests of the estate would be thereby promoted; but, after selling, under an order of the probate court, lands which were incumbered by a mortgage executed by the intestate in his life-time, he cannot pay the mortgage debt in full out of the proceeds of sale, and charge the estate with the payment........................ 109

9. *Purchase by administrator, at his own sale, set aside.*—The purchase of a slave by the administrator in this case, at a sale made by himself under an order of the probate court, was set aside at the instance of the distributees of the estate, on proof that very few persons were present at the sale; that only one bid was made; that the price at which the slave was knocked off was less, by $200 to $400, than her real value; that the administrator made no effort to attract a crowd at the sale, and declined to impart information as to the time and place of sale to the intestate's father, who, as he knew, desired to purchase................................................................................ 623

FRAUDS, STATUTE OF.

1. *Three years possession of personalty under loan.*—Section 1295 of the Code, as to three years possession of personal property under a loan, being a re-enactment of the former statute, (Clay's Digest, 255, § 2,) is not confined in its operation to possessions commenced or continued for three years since the Code went into effect; consequently, to enable a creditor of the loanee to subject the property to the payment of his debt, it is not necessary that he should show three years continuous possession before the Code went into effect, or three years continuous possession since that time.—Durden v. McWilliams............................ 345

2. *Contract not to be performed within one year.*—A verbal contract for the performance of services as an overseer, for the term of twelve months, to commence at a future day, is void under the statute of frauds, (Code, § 1551, sub. 1;) and a partial performance of it, coupled with a discharge without cause, will not enable the party to recover the stipulated wages after the termination of the twelve months.—Scoggin v. Blackwell............. 351

3. *Sale of lands; memorandum of sale by auctioneer.*—Where lands are sold at auction, and the entry on the auctioneer's book

FRAUDS, STATUTE OF—CONTINUED.

does not show the name of the person on whose account the sale is made, nor refer to any other writing in which the name is stated, the sale is void under the statute of frauds, (Code, §§1551–52,) and the defective entry cannot be aided by parol evidence.—Knox v. King................................................ 367

4. *Promise to pay debt of another.*—Where the defendant, a widow, before the grant of administration on the estate of her deceased husband, "verbally instructed or requested plaintiff or one of his clerks to let one S., a man in the employment of the estate, have out of plaintiff's store whatever articles he wanted, and the estate would pay it,"—*held*, that the promise was an original undertaking, not within the statute of frauds, and was binding on the defendant personally, on proof that the goods were furnished on the faith of it, although charged on plaintiff's books to the estate, and that the administrator refused to pay for them.—Ledlow v. Becton................. 596

5. *Contract for sale of chattels at price exceeding* $200.—A contract between the lessor and lessee of certain iron-works, to the effect that "the iron made at the furnace should be W.'s, [lessor] as fast as it was made, until he was paid for his advances in money and the rent due," is within the statute of frauds, (Code, § 1551,) if the amount of the advances and rent exceeds $200 ; and the agreement for the discharge of the purchase-money does not show such payment as will take the case out of the statute.—Sawyer v. Ware........................ 675

6. *Effect of statute.*—The statute of frauds prevents the enforcement of a contract within its provisions, unless evidenced according to its requirements; but it does not prevent the voluntary execution of such contract by the parties, nor annul it when thus executed...................................................... 675

7. *Same.*—The fact that a contract in writing, signed by only one of the parties, contains stipulations to be performed by the other which are within the statute of frauds, will not prevent a reformation of the instrument in equity at the suit of the latter.—Thompson v. Marshall.............................. 504

GARNISHMENT.

See ATTACHMENT.

GUARDIAN AND WARD.

1. *Compensation of guardian.*—Under the provisions of the Code, (§§2039, 1825,) a guardian is not entitled to any compensation for his services in lending out the funds of his ward, and compounding the interest accruing thereon; that being one of his ordinary duties, and not belonging to the class of "special or extraordinary services."—Allen v. Martin................ ........... 330

2. *Non-residence of guardian good cause of removal.*—The removal

GUARDIAN AND WARD—CONTINUED.

of a guardian from the State being declared by the statute a sufficient cause for the revocation of his letters, (Code, ₴ 2037,) his non-residence at the time of his appointment is necessarily a good cause for his removal, without regard to the age of the ward, or the refusal of the person afterwards nominated by him to accept the office of guardian.—Cockrell v. Cockrell.... 673

3. *Mother's right, as guardian, to custody of infant children.*—Under the statutes of this State, (Code, ₴₴ 2014–15,) as at common law, the mother is entitled, on the death of the father, to the custody of infant children under fourteen years of age; but this right is not beyond the control of courts of justice.—Striplin v. Ware...................................................................... 87

4. *Removal of mother from custody of infant children.*—The chancery court will remove infant children from the custody of their father or mother, whenever it is clearly shown that their morals, safety or interests require their removal; but this jurisdiction is one of extreme delicacy, and will only be exercised in cases of gross misconduct on the part of the parent, or inability from some cause to furnish proper nurture and training for the child. The fact that the second husband of the mother, who shares with her the care and management of her infant children, is not a man of unexceptionable morals, and is addicted to profanity, even in the presence of his family, is not sufficient cause for the removal of the children from the custody of the mother, against her wishes, when it is shown that they are treated kindly, are well fed, well clothed, and sent to school; that no charge is made for their board and lodging, and that they are of such tender years as to require their mother's constant watchfulness and care................... 87

5. *Purchase by executor and guardian at his own sale.*—The defendant having married the complainants' mother, who was at the time their guardian by appointment from the probate court, and also executrix of their deceased father's will; and having afterwards procured from the probate court, as executor in right of his wife, an order for the sale of decedent's real estate, which was devised to the complainants jointly with their mother; and having himself become, through an agent, the purchaser at the sale,—the sale was set aside at the instance of the infant devisees, although no fraud, unfairness, or inadequacy of price was shown.—Calloway v. Gilmer.................. 354

HABEAS CORPUS.

1. *When right to freedom may be tried by habeas corpus.*—Although a negro, or person of color, if held as a slave, cannot test his right to freedom by petition for *habeas corpus;* yet, when a white person is held as a slave, a petition for *habeas corpus* may be sued out in his behalf.—Guilford v. Hicks................ 9

See, also, BAIL.

## HUSBAND AND WIFE.

1. *Husband's marital rights to wife's realty.*—The husband acquires, by the marriage, the right to use and occupy, during coverture, lands belonging to the wife, whether her title be governed by the "woman's law" or not.—Bishop v. Blair.................. 80

2. *Husband's marital rights; how affected by adultery, abandonment of wife, and intention that she should hold property as her own.*—The husband's marital rights attach, as against the surviving wife, to slaves which are delivered to her during the coverture, as her distributive share of a decedent's estate, although the husband, at the time of such delivery, had abandoned the wife, and was living in adultery with another woman, and so continued to live up to the time of his death; and although he never had the actual possession of the slaves, nor claimed them, but intended that his wife should hold and enjoy them as her separate property.—Bell v. Bell's Adm'r.............. 466

3. *Devise to husband and wife.*—At common law, under a devise to husband and wife during coverture, the entire estate vested in both of them as one person, and, on the death of either, continued in the survivor; but, under the statutes of this State creating and regulating the separate estates of married women, (Code, §§ 1981-97,) such a devise creates the same estate in the parties as if it had been made before coverture: on the death of the wife intestate, her undivided moiety descends to her heirs-at-law, subject to the statutory rights of her surviving husband during his life; and on the subsequent death of the husband, the wife's heirs become entitled to the possession of her undivided moiety.—Walthall v Goree........... 728

4. *Removal of husband as trustee.*—A deliberate and permanent abandonment of the wife by the husband, without reasonable cause, is sufficient (Code, § 1994) to authorize his removal from the trusteeship of her statutory separate estate.—Boaz v. Boaz. 334

5. *When wife's administrator may come into equity.*—The personal representative of the wife cannot maintain a bill in equity, against the personal representative and heirs-at-law of the husband, to recover property which accrued to the wife after her desertion by the husband; which was claimed, held and controlled by her as a feme sole; of which the husband never had possession, and to which he never asserted any claim or title. Bell's Adm'r v. Bell.................................................... 195

6. *When widow may come into equity, against husband's administrator.* A widow cannot maintain a bill in equity, against the administrator of her deceased husband, to recover money belonging to the *corpus* of her statutory separate estate, which the husband had received in his life-time, and had not paid over or accounted for. (A. J. WALKER, C. J., *dissenting.*).—Bennett's Adm'r v. Bennett.................................................... 571

INSOLVENT ESTATES.

1. *Payment of debts by administrator.*—In paying debts, not of a preferred class, before the expiration of eighteen months from the grant of administration, an administrator acts at his peril: if the estate afterwards proves to be insolvent, he can not charge it with the amount so paid by him, though he may be substituted for the creditors so paid, and receive the distributive share of the assets to which they would have been entitled; and this relief he may obtain in the probate court, without resorting to chancery.—McNeill v. McNeill............... 109

2. *Satisfaction of mortgage by administrator.*—The administrator of an insolvent estate has authority to discharge an incumbrance on property belonging to it, whenever the interests of the estate would be thereby promoted; but, after selling, under an order of the probate court, lands which were incumbered by a mortgage executed by the intestate in his life-time, he cannot pay the mortgage debt in full out of the proceeds of sale, and charge the estate with the payment...................... 109

3. *Administrator's authority to rent lands.*—Under the provisions of the Code, (§§ 1737, 1751,) the administrator of an insolvent estate may rent out the lands belonging to the estate, and receive and hold the rents as assets; consequently, the heir cannot maintain an action against him to recover such rents. Boynton v. McEwen....................................................... 348

JOINT TENANTS.

. See ACTION, 4.

JUDGMENTS AND DECREES.

1. *Requisites of decree.*—The failure of the probate judge to sign the minutes of the term, does not invalidate a decree, nor render it inadmissible as evidence under the plea of *nul tiel record.* Frazier's Executors v. Praytor............................... 691

2. *Form of judgment in proceeding against executor.*—In a proceeding before the probate court, by which the legatees seek to charge the executor with the value of a slave not included in his inventory; the jury having returned a verdict against the executor, assessing the value of the slave at a specified sum,— the court cannot render a judgment against the executor, for the assessed value of the slave.—Mims v. Sturdevant............ 636

3. *Conclusiveness of judgment.*—A judgment at law on a promissory note, given for the purchase-money of land, is conclusive between the parties as to the amount then due on the note; and the defendant, when subsequently seeking a specific performance of the contract in equity, cannot claim the benefit of payments which ought to have been credited on the note.—Bobe's Heirs v. Stickney.................................................. 482

JUDGMENTS AND DECREES—CONTINUED.

4. *Same.*—A judgment for the claimant, in a trial of the right of property under the statute, is not a bar to a subsequent action by him to recover damages for the tortious taking of his property under the execution.—Lenoir's Adm'r v. Wilson................ 600

5. *Conclusiveness of probate decree.*—A decree of the probate court against an administrator, under his appointment by virtue of his office of sheriff, concludes the sureties on his official bond as sheriff from contesting, before that court, their liability for the default ascertained by the decree, on the ground that, after the expiration of their principal's term of office as sheriff, he was appointed administrator *de bonis non* in his individual capacity, and gave bond with new sureties, who thereby became liable for his previous default.—Ragland v. Calhoun's Adm'r.... 666

6. *Validity of grant of administration de bonis non.*—A grant of letters of administration *de bonis non*, when there is in fact no vacancy in the administration, will be held void, even in a collateral proceeding; but it will not be held void, in a collateral proceeding, merely because it fails to show the appointment and removal, resignation, or death, of the administrator in chief; and where the record shows the regular appointment of the administrator in chief, and that on a subsequent day it was ordered that his "resignation be received and recorded," and that letters of administration *de bonis non* were on the same day granted to another, it will be presumed that the resignation was of the office of administrator, and was in writing as required by the statute............................................. 559

7. *Same.*—Where a transcript from the records of the probate court, purporting to be "a full, true and complete exemplification of the records and files of said court touching the administration" of a decedent's estate, shows a grant of administration *de bonis non*, on the condition that the party execute and file a bond, but does not show that the bond was executed and filed as required by the order, it will be presumed in favor of the validity of a subsequent grant of administration, when collaterally assailed, that the party failed to comply with the condition.................................................. 559

8. *Assignment of judgment.*—An assignment of a judgment, in these words, "For value received, I hereby transfer the entire control of the *fi. fa.* from the above stated judgment, and of the judgment above stated, from this date, to A. B. C.—is an unqualified transfer of the judgment.—Griffin v. Camack........ 695

JURISDICTION.

1. *Of city court of Mobile at special terms.*—Under the act of 1858, " to repeal an act therein named regulating the sessions of the circuit and city courts of Mobile," (Session Acts 1857-8, p. 57, ¿ 3,) the city court has authority, at a special term, to origi-

JURISDICTION—CONTINUED.

nate business, to take indictments, and to organize a grand jury. 236

2. *Of probate court to sell real estate.*—The probate court has no jurisdiction to order the sale of lands, for the purpose of division among a decedent's heirs-at-law or devisees, when the decedent had, at the time of his death, no title whatever to the land, either legal or equitable.—Bishop v. Blair.............. 80

3. *Of probate court to grant administration.*—The jurisdiction of the probate court, in the matter of the grant of letters testamentary, and of administration, is original, general, and unlimited; and hence every reasonable presumption will be indulged in favor of its orders, when collaterally assailed. Gray's Adm'rs v. Cruise...................... ..................... 559

4. *Of circuit court, and of register in chancery, in causes transferred from probate court.* — The jurisdiction of the circuit court under the act of 1850, (Session Acts 1849–50, p. 36, § 40,) and of the register in chancery under the Code, (§§ 560, 1910–12,) in causes transferred from the probate court on account of the incompetency of the probate judge, is special and limited; consequently, the record in a transferred cause must affirmatively show the jurisdiction of the court to which the transfer is made.—Wilson v. Wilson.................................... 655

5. *Same.*—If the record in a transferred cause recites the jurisdictional fact which authorized the transfer, the recital is conclusive in a collateral proceeding, and the validity of the subsequent orders and decrees cannot be impeached on account of irregularities; but a simple recital of the legal conclusion, that the probate judge " is incompetent," without stating the fact from which the incompetency results, is not sufficient to support the jurisdiction....................................................... 655

6. *Incompetency of presiding judge from interest.*—Where the probate judge is one of the sureties on an administration bond, he is incompetent from interest to preside on the settlement of the administration, or to make any order affecting the liability of the administrators under their bond; and if one of the administrators is also the guardian of the sole distributee of the estate, and the administration has never been settled, he is also incompetent to preside on the settlement of the guardian's accounts; and if the guardianship has never been settled, although the guardian has been removed, he is equally incompetent to preside on the settlement of the accounts of the succeeding guardian, who is sought to be charged with negligence in failing to collect from his predecessor assets belonging to the estate of his ward....................................................................... 655

JUSTICE OF THE PEACE.

1. *Garnishment on judgment.*—Under the provisions of the Code, (§§ 2471, 2819,) a justice of the peace has authority to issue a garnishment on a judgment rendered by him.—Gould v. Meyer. 565

JUSTICE OF THE PEACE—CONTINUED.

2. *Practice in appeal cases.*—Ordinary appeal cases from justices' courts are triable *de novo* in the circuit court; and that court may render judgment, on appeal by the defendant, for a larger amount than was recovered before the justice.—Brooks v. Carter...................................................................... 682

3. *Variance between summons and complaint.*—In an action of forcible entry and detainer, or unlawful detainer, removed by appeal from a justice's court into the circuit court, (Code, § 2864,) the cause being triable *de novo*, the complaint should not be rejected, on account of a variance between it and the cause of action endorsed on the summons issued by the justice.—Van Aspen v. Townsend............................................................... 582

4. *Practice on error in appeal or certiorari cases.*—In appeal and *certiorari* cases, which, when the amount in controversy is less than $20, are tried by the court without the intervention of a jury, (Code, § 2369,) the judgment of the circuit court will not be reversed on error, unless its decision on the facts is shown to be manifestly wrong.—Dane v. Mayor of Mobile... 304

LAND LAWS.

1. *Location of lands by State, under act of congress of 11th August, 1848.*—The act of congress of August 11, 1848, (9 U. S. Statutes at Large, 281,) having placed at the disposal of the legislature of this State, for the use of schools in the valueless sixteenth sections, certain lands theretofore granted to the State for internal improvements, (5 *ib.* 455,) and authorized the legislature to locate the same; and the legislature having, by the act of February 13, 1850, (Session Acts 1849–50, p. 82,) authorized the issue of certificates of purchase for these lands by the comptroller of public accounts, or by a locating agent,—a certificate of purchase, signed by the governor, and countersigned by the secretary of state, being issued without authority, does not evidence a selection of the land by the State, and cannot defeat a recovery by one claiming under subsequent entry from the United States.—Matthews v. Baker...................................... 186

2. *Patent to deceased person.*—Under the act of congress of May 20, 1836, (5 U. S. Statutes at Large, 31,) a patent issued in the name of a person then deceased enures to the benefit of his heir, devisee or assignee, and the heir may maintain an action at law on such patent.—Phillips v. Sherman.............................. 189

3. *Validity and conclusiveness of patent.*—A patent issued under the act of congress of August 26, 1842, "for the relief of John Pratt, or his legal representative," (6 U. S. Statutes at Large, 865,) cannot be collaterally assailed, in a court of law, on the ground that the person to whom it was issued was not the legal representative of said Pratt; that question having been controverted before the commissioner of the general land-office, and decided

LAND LAWS—CONTINUED.

by him in favor of the patentee, and his decision having been affirmed by the secretary of the interior on appeal........... 189

4. *Cancellation of patent wrongfully issued.*—When a patent has been wrongfully or erroneously issued, the commissioner of the general land-office may, at any time before its delivery from the local land-office, revoke and cancel it...................... 189

5. *Powers of commissioner of general land-office, under act of congress of August 3d, 1846, and validity of sale ordered by him.*—Under the act of congress of August 3d, 1846, "providing for the adjustment of all suspended pre-emption land-claims," (U. S. Statutes at Large, vol. 9, pp. 51–2,) the commissioner of the general land-office being authorized to order, absolutely and unconditionally, the sale of lands which, under the provisions of that act, shall have reverted to the United States, the fact that he instructed the officers of the district land-office to offer such lands for sale, " if, after a careful examination of the books and maps in their office, there appeared on them no objection to offering the same for sale," does not affect the validity of the purchaser's title, when it is not shown that any valid objection to the sale appeared on the books and maps of the district office. Moreover, the said act of congress having confided the question of sale *vel non* to the discretion of the commissioner of the general land-office, and having failed to prescribe any mode of ascertaining the existence of the facts on which depended the propriety of a sale, the ordering of the sale by the commissioner is evidence that the facts existed which rendered such sale proper.—McTyer v. McDowell............................. 39

6. *Transfer of pre-emption right.*—Under the act of congress of May 29th, 1830, granting pre-emption rights to settlers on the public lands, (U. S. Statutes at Large, vol. 4, pp. 420–21,) an assignment or transfer of the right of pre-emption, prior to the issue of a patent, is declared to be "null and void," and does not pass the right of pre-emption to the transferree; consequently, such transferree cannot defeat a recovery by one claiming under subsequent patent from the United States, by simply showing that the transferror, prior to his assignment, had a pre-emption right to the land, and offered to pay the entrance-money to the proper land-officers, but that they refused to receive it, and would not let him perfect his entry..................... 39

LANDLORD AND TENANT.

1. *Estoppel against tenant from denying landlord's title.*—An order of the commissioners' court, granting to the defendant a private right of way through the plaintiff's lands, does not estop the defendant, when sued for the commission of a trespass on lands outside the track of the private road, from disputing the plaintiff's title to the land.—Bishop v. Blair.................................. 80

LANDLORD AND TENANT—continued.

2. *Same.*—The acceptance of a lease from a stranger, by a party who is in possession of land, if done "in ignorance of his rights," does not estop him from afterwards impeaching the validity of such stranger's title.—Cain v. Gimon............ 168

LEGACY AND DEVISE.

1. *Devise to husband and wife.*—At common law, under a devise to husband and wife during coverture, the entire estate vested in both of them as one person, and, on the death of either, continued in the survivor; but, under the statutes of this State creating and regulating the separate estates of married women, (Code, §§1981–97,) such a devise creates the same estate in the parties as if it had been made before coverture: on the death of the wife intestate, her undivided moiety descends to her heirs-at-law, subject to the statutory rights of her surviving husband during his life; and on the subsequent death of the husband, the wife's heirs become entitled to the possession of her undivided moiety.—Walthall v Goree. .......... 728

2. *Bequest construed to create life-estate in widow, charged with support and education of grand-children.*—Where a testator, by the second clause of his will, devised and bequeathed to his wife all the property of which he might die possessed, " during the term of her natural life, to be kept together" on his plantation " for the purpose of supporting her, and for the support and education of my [his] five grand-children ;" and, by the fourth clause, devised a tract of land to one of his daughters, "which," he declared, " is excepted out of the life-estate heretofore given to my wife,"—*held*, that the widow took the entire life-estate, charged with the support and education of the grand children, and not in trust for their benefit equally with herself.—Coleman v. Camp. ............................ ............ 159

3. *Bequest to widow and executrix construed as enuring to her individually, and not officially.*—Under a devise and bequest in the following words : "I give and bequeath to my wife Rebecca all the property, both real and personal, of which I may die possessed, (except as hereinafter excepted,) during the term of her natural life, to be by her kept together on my plantation on which I now reside, for the purpose of supporting my said wife, and for the support and education of my five grand-children, the children of my deceased son Washington ; and after her death, then said property and estate to be disposed of as follows,"—whatever interest vests in the widow, she takes individually, and not as executrix ; and if a trust is thereby imposed upon her, it does not attach to the office of executrix, nor pass on her death to her co-administrator.—Camp v. Coleman...................................................................... 163

4. *Assent to legacy.*—Where a life-estate in the bulk of the testa-

LEGACY AND DEVISE—CONTINUED.

tor's property, consisting of lands, slaves, &c., is given to his widow, who is also appointed executrix; and who afterwards procures the probate of the will, and qualifies as administratrix with the will annexed,—her continuous use of the property during her life; in accordance with the provisions of the will, is an implied assent to her own legacy, which involves an assent to the legacy to the remainder-men.................................... 163

LIMITATIONS, STATUTE OF.

1. *Adverse possession by purchaser, under color of title.*—If a purchaser enters into the possession of land under a vendor's bond, conditioned to make titles when the purchase-money is paid, he cannot, so long as the purchase-money remains unpaid, set up adverse possession against the vendor under color of title; but, after the purchase-money has been paid in compliance with the terms of the contract, such a bond is color of of title, and subsequent possession under it for a sufficient length of time will bar the legal title.—McQueen v. Ivey............................. 306

2. *Statute of limitations against sheriff's sureties.*—The act of 1832, prescribing six years as the period within which an action must be commenced against the sureties of public officers for the default of their principal, (Clay's Digest, 329, § 90,) does not apply to a summary proceeding against the sureties of a sheriff on his official bond, for the default of their principal as administrator by virtue of his office as sheriff.—Ragland v. Calhoun's Adm'r .............................................. 606

LUNATICS.

1. *Meaning of non compos mentis.*—The term *non compos mentis* denotes neither mere mental weakness, nor a total deprivation or destruction of the intellectual powers, but simply unsoundness of mind.—*In re* Carmichael............................................... 514

2. *Form and sufficiency of verdict*—It is the safer and more satisfactory practice to have the verdict in the very language of the statute, (Code, § 2753,) or its substance........................ 514

See, also, EVIDENCE, 10–11, 41–44.

MANDAMUS.

1. *Against whom mandamus lies.*—A *mandamus* lies against the governor of the State, as well as any other public functionary, to compel the performance of a purely ministerial duty enjoined by statute.—Tenn. and Coosa Railroad Co. v. Moore... 371

2. *And when.*—Where a sum of money is loaned by act of the legislature to a railroad company, on its complying with certain terms and conditions in said act prescribed; and the governor is required, on the performance of these conditions by

MANDAMUS—CONTINUED.

the company, to accept its bond for the faithful application and repayment of the money, and to draw his warrant in its favor, on the custodian of the fund, for the sum thus loaned, a *mandamus* will lie to compel the performance by the governor of this ministerial duty, since an action for damages, if it could be maintained, would not afford adequate and complete redress. 371

3. *Same.*—If a court prohibits an attorney, whose license authorizes him to practice before it, and who has not been removed or suspended in the mode prescribed by the statute, from appearing at its bar as counsel in causes in which he has been employed, this is the deprivation of a clear legal right, to the enjoyment of which he will be restored by *mandamus.*—Withers v. The State.................................. 252

4. *Averments of petition for mandamus.*—In an application for a *mandamus*, by an attorney-at-law who has been denied the right to appear as counsel in a municipal court, an averment that the relator " is a practitioner of law in all the courts of this State, both of state and federal jurisdiction," is not a sufficient allegation of his legal right to practice as an attorney in the courts named.................................. 252

MORTGAGES.

1. *Contract held conditional sale, and not mortgage.*—A written instrument, signed by the defendant, reciting that he had *purchased* from the complainant several slaves, specifying the name and separate value of each, and then stipulating that, if the complainant "shall redeem, or cause to be redeemed, any part of said negroes within seven years", the defendant would make a specific deduction from the value of each: whether considered by itself, or in connection with an absolute bill of sale, executed on the next day, which acknowledged the receipt of the money in full payment for the slaves, and contained a warranty of soundness and title, is a conditional sale, and not a mortgage; nor will a court of equity declare the contract to be a mortgage, on proof that the complainant at first applied to the defendant for a loan of money, or other pecuniary aid—that the defendant declined to loan money, but made another proposition in reply, to which the complainant did not accede; and that by the arrangement finally concluded between them, the defendant assumed a large debt due from the complainant to a third person, took the negroes at the prices specified in the writings above mentioned, and received from the complainant his several promissory notes for the difference between the aggregate price of the slaves and the amount of the assumed debt; there being no proof of fraud, imposition, or unfairness, nor any great disparity between the value of the slaves and the price agreed to be paid.—Swift v. Swift.................................. 147

MORTGAGES—CONTINUED.

2. *Constructive notice of mortgage.*—The registration of a mortgage is constructive notice only to those who hold under the mortgagor, (correcting *dictum* in *Center v. P. & M. Bank,* 22 Ala. 743;) but, if the mortgagor, having voluntarily destroyed an unregistered deed to himself, and procured the execution of a deed by his vendor to a trustee for his wife, joins with his wife and the trustee in a conveyance to a purchaser, the registration of the mortgage charges the purchaser with constructive notice of such unregistered deed, and he cannot successfully defend an action at law by one claiming under a subsequent purchase at execution sale against the mortgagor.—Gimon v. Davis....... 589

2. *Purchase by mortgagee at his own sale.*—A purchaser of land, having executed to his vendor a mortgage to secure the payment of the purchase-money, and having afterwards resold the land to a third person, who agreed that he would discharge the unpaid balance due to the vendor, and that the land should remain bound by the mortgage, is not within the rule which forbids a mortgagee to purchase at his own sale, and may become the purchaser at the sale under the mortgage.—McNeill v. McNeill ............................................. 109

4. *Same ; who may impeach sale, and on what ground.*—The wife of the mortgagor, claiming under a voluntary conveyance from her husband subsequent to the mortgage, may, in equity, impeach the validity of the sale under the mortgage ; and if her bill alleges that the mortgage debt was nearly (if not quite) paid, that the mortgagee concealed from her the true state of the account between himself and the mortgagor, had the property sold for a pretended debt greater than was actually due, and, in effect, became himself the purchaser at the sale, she makes out a case for equitable relief.—Cain v. Gimon........ 168

5. *Who may take advantage of usury.*—The wife of the mortgagor, claiming under a subsequent voluntary conveyance to her husband, and seeking to impeach the validity of the sale under the mortgage, and to be let in to redeem, cannot take advantage of usury in the mortgage debt...... ................... 168

NON-CLAIM.

See ESTATES OF DECEDENTS, 2.

OFFICERS.

1. *Validity of official acts of officer de facto.*—The official acts of an officer *de facto* are valid, so far as the rights of the public, or of third persons having an interest therein, are concerned, and cannot be indirectly called in question in a proceeding to which he is not a party.—Heath v. The State............... 273

PARENT AND CHILD.

    See GUARDIAN AND WARD, 3, 4.

PARTNERSHIP.

1. *What constitutes partnership.*—A contract, by which the plain-
tiff agreed to let the defendants have all the pine timber on
his lands that was suitable for good lumber, and the defend-
ants agreed to pay him therefor, annually, in money, one-fifth
of the gross proceeds of the lumber sold and collected by
them, does not constitute the parties partners *inter sese.*—Fail
& Miles v. McRee........................................ 61

2. *Same.*—The fact that a negro-trader, in whose sales-house slaves
are exhibited for sale and sold by the owner, charges half-com-
missions for the use of his house, does not constitute him a
partner with the owner in the sale.—Dillard v. Scruggs...... 670

PAYMENT.

1. *Remittance of money by mail.*—To absolve a debtor from the
hazzard of loss, in the transmission of money by mail to his
creditor, it is necessary that the remittance should be made
by the authority of the creditor, and in the manner and with
the precautions prescribed by him ; and this principle is not
affected by the impossibility of a compliance, on the part of
the debtor, with the conditions and directions prescribed by
the creditor.—Williams & Smart v. Carpenter & Co......... 9

2. *Application of payments.*—If a debtor, owing several demands
to the same creditor, makes a general payment, without giv-
ing any directions as to its appropriation, the creditor may, at
his election, apply it to any one of the debts then due, but
cannot prefer a debt not due, to the exclusion of one due or
past due; and if he fails to make any election, the law will
make the application according to fixed rules, preferring a
debt due to one not due,—Bobe's Heirs v. Stickney... ..... 482

3. *Same.*—Where a debtor owes two notes, maturing at different
times, and the creditor has brought suit on the first; and, on
the day the second note matures, the debtor makes a general
payment, without giving any directions as to the manner of its
appropriation,- the fact that the creditor afterwards takes judg-
ment on the first note, for the full amount due thereon with in-
terest, shows an election on his part to apply the payment to
the second note..................................... 482

4. *Same.*—If a debtor owes two distinct demands, both over-due,
and makes a general payment, without giving any directions as
to its application, the law will apply it, in the absence of a
specific application by the creditor, to that demand which,
though not barred at the time the payment was made, has since
become barred by the statute of limitations, or of non-claim.
(STONE, J., *dissenting.*)—Robinson's Adm'rs v. Allison......... 525

PLEADING AND PRACTICE.

### I. Parties.

1. *Who is proper party plaintiff.*—It is not necessary, under section 2129 of the Code, that an action for a breach of warranty of the soundness of a slave should be brought in the name of the party really interested.—Newsom v. Huey........................... 37

2. *Same.* A certificate, issued and signed by the chief engineer of a railroad company in these words: "This is to certify, that the sum of $1000 is due to A. B. from the Ala. & Miss. Rivers Railroad Company, for bridging and track-laying,"—is a contract for the payment of money, within the meaning of the statute, (Code, § 2129) requiring an action to be brought in the name of the party really interested.—Ala. & Miss. Rivers Railroad Co. v. Sanford & Reid.............................. 703

3. *Same.*—Where several persons are interested in money bet and lost on a horse-race, an action may be brought for the use of the wife of any one of them, without joining the others, to recover her husband's portion of the money.—Davis v. Orme............ 540

### II. Declaration, or Complaint.

4. *In trespass qu. cl. fr.*—In trespass for injuries to land, it is not necessary that the complaint should allege that the land is situated in the county in which the action is brought: if it conforms substantially with the form given in the Code, (p. 555,) it is sufficient.—Pike v. Elliott......................................... 69

### III. Demurrer.

5. *Effect of demurrer.*—Under section 2253 of the Code, which requires a specification of the grounds of demurrer, a demurrer to a plea cannot be visited upon the complaint.—Newsom v. Huey......................................................... 37

6. *Presumption in favor of regularity of demurrer.*—When a demurrer has been sustained by the primary court, the appellate court will presume, unless the record affirmatively shows the contrary, that the causes of demurrer were specified, as required by the statute........................................... 37

### IV. Pleas.

7. *Form and requisites of plea.*—A plea which assumes to answer the whole complaint, but does not negative the cause of action set out in one of the counts, is demurrable.................. 37

8. *Error without injury in rulings on pleadings.*—The wrongful sustaining of a demurrer to a special plea, when the defendant might have had the benefit of the same defense under his other pleas, is, at most, error without injury.— Powell v. Asten....... 140

9. *Waiver of objection to plea of tender.*—If issue is joined on a plea of tender, without objection to its sufficiency, the plaintiff can not be heard to insist that the plea was not filed in time, or

PLEADING AND PRACTICE—CONTINUED.

that it was not accompanied by a payment of the money into court at the first term.—Rudolph v. Wagner............... ........ 698

10. *When sworn plea is necessary.*—In an action against a railroad company, on a certificate issued by its engineer for work done by a contractor, (which certificate is alleged to have been signed and issued by the engineer as the authorized agent of the corporation, and to have been transferred by the contractor to plaintiff;) there being no sworn plea, denying the execution of the certificate,—the instrument itself is evidence of the existence of the debt, (Code, §§ 2238, 2278–79;) and if the action is brought by an assignee, proof of the assignment is not required of him, unless it is denied by a sworn plea.—Ala. & Miss. Railroad Co. v. Sanford & Reid.................................... 703

### V. GENERAL PRACTICE.

11. *Allowing jury to use memoranda prepared by counsel.*—The practice of permitting the jury, on their retirement, to take with them memoranda prepared and used by counsel on the trial, should not be encouraged; but, where it appears that the mem orandum simply "contained and referred to the various items of debit and credit contained in th · accounts before the jury," and that the court specially instructed the jury, " that it was not to be regarded by them as evidence, and that they could not look to it for any purpose, except to aid them in referring to the various items of account before them,"—the appellate court will not reverse on account of its admission.—Robinson's Adm'rs v. Allison ................................................... 525

RAILROADS.

1. *Construction of act of February 17, 1854, " to aid the Tennessee and Coosa railroad."*—The act of February 17, 1854, entitled " An act to aid the Tennessee and Coosa railroad," (Sess. Acts 1853–4, p. 280,) is not void for uncertainty ; the portion of the two and three per cent. funds therein specified, is advanced to the railroad company as a loan, and not as a gift; and the company is bound, in the absence of subsequent legislation as to the terms of payment, to repay the sum so loaned, in cash, within ten years, without interest for four years, and with interest at five per cent. *per annum* after four years.—Tenn. & Coosa Railroad Co. v. Moore.............. ...... .......................... 371

SLANDER.

1. *What words are actionable.*—To say of a female, that a certain man " *keeps her,*" involves a charge of illicit sexual intercourse, when the words are understood in their ordinary, popular acceptation ; consequently, under the Code, (§ 2220,) the words are, *per se,* actionable.—Downing v. Wilson......................... 717

SURETIES.

1. *Right of contribution between co-sureties.*—In the absence of special circumstances rendering the general rule inapplicable, one surety is entitled to share in the benefit of any indemnity which a co-surety may have obtained from their principal, although such indemnity may have been intended for the benefit of the latter surety alone.—Hartwell v. Whitman............................ 712

2. *Amount of recovery for contribution.*—In a summary proceeding for contribution between co-sureties, (Code, § 2645,) a recovery can only be had for the defendant's aliquot proportion of the debt, although he may have been fully indemnified by the principal; consequently, evidence of such indemnity is irrelevant.—Simmons v. Varnum................................... 92

3. *Subrogation of surety to vendor's lien.*—If the administrator of an insolvent estate pays in full, with his own individual funds, a note given for the purchase-money of land, on which he was bound as his intestate's surety, he cannot claim to be subrogated, in equity, to the vendor's lien on the land.—McNeill v. McNeill.................................................................. 109

4. *What will discharge surety.*—The failure and refusal of the lessor, when required by the lessee's surety, who was bound jointly with his principal by instrument under seal, to proceed by distress-warrant against the lessee, does not discharge the surety from liability.—Brooks v. Carter.............................. 682

TENDER.

1. *Sufficiency of tender.*—If the complaint claims interest only from the 1st January, although the debt was due before that day, the plaintiff cannot be heard to insist that a tender of the principal, between the day on which the debt matured and the 1st January, was not sufficient, because it did not include the interest which had then accrued.—Rudulph v. Wagner... 698

2. *Same.*—A tender of the entire amount due, including interest, at any time between the maturity of the debt and the commencement of suit, stops the interest, and discharges the debtor from the costs of suit..................................... 698

3. *Same.*—As a general rule, an actual production and proffer of the money is essential to constitute a valid tender; but, if the debtor is ready and willing to pay, and is only prevented from producing the money by the creditor's declaration that he will not receive it, this dispenses with an actual production of the money.................................................................... 698

See, also, PLEADING AND PRACTICE, 9.

TRESPASS.

1. *When action lies between joint tenants.*—Where there has been no actual ouster, one joint tenant o land cannot maintain an action of trespass against his co-tenant.—Bishop v. Blair......... 80

TRESPASS—CONTINUED.

2. *Form and sufficiency of complaint.*—In trespass for injuries to land, it is not necessary that the complaint should allege that the land is situated in the county in which the action is brought: if it conforms substantially with the form given in the Code, (p. 555,) it is sufficient.—Pike v. Elliott..................... 69

3. *Relevancy of evidence.*—In trespass *quare clausum fregit,* the evidence of a witness who testifies to a trespass committed by defendant on lands belonging to plaintiff, but cannot identify those lands as the lands described in the complaint, cannot be excluded from the jury on motion........................................... 69

4. *Plea of former recovery by plaintiff as claimant in trial of right of property.*—A judgment for the claimant, in a trial of the right of property under the statute, is not a bar to a subsequent action by him to recover damages for the tortious taking of his property under the execution.—Lenoir's Adm'r v. Wilson...... 600

TRIAL OF RIGHT OF PROPERTY.

1. *Competency of defendant in execution as witness for plaintiff.* Under the Code, (§ 2802,) the defendant in execution is a competent witness for the plaintiff, on a trial of the right of property.—Durden v. McWilliams........................................... 354

TROVER.

1. *When sub-bailee of hirer is liable in trover.*—If the hirer of a slave under a general contract, or under a special contract for his employment as a plantation hand, gratuitously lends him to another person, for the specific purpose of being employed in raising a gin-house, and the slave is killed while so employed, the sub-bailee is liable to the owner for his value, in trover, no matter what degree of care he exercised in having the work performed, although he had no notice of the owner's title, and no reason to suppose that the hirer was not the owner.—Jones v. Fort...................................... 449

2. *When action lies for conversion of promissory note.*—When a note is endorsed and transferred as collateral security, a subsequent payment of the original debt by the transferror operates as a re-transfer to him of the endorsed note; and if the creditor, or his personal representative, refuses to deliver the note on demand, trover lies against him for the conversion.—Overstreet v. Nunn's Executors.............................................. 6?

TRUSTS.

1. *Trustee's title under deed.*—Where slaves are conveyed by deed to a trustee, "or his legal representative," for the sole use and benefit of the grantor's unmarried daughter and her children, forever, the legal title of the trustee does not cease at the death

TRUSTS—CONTINUED.

of the daughter, leaving children; and if the original trustee resigns, and another person is appointed in his stead by the circuit court, the death of the substituted trustee does not invest the children with the legal title.—Williams v. McConico. 22

2. *Same, under decree in chancery.*—Under a decree in a chancery suit, making partition of the estate of the complainant's deceased father among the distributees; settling the portion of the complainant, who was then a married woman, on a trustee, for her sole and separate use during life, with remainder to her children living at her death; appointing a trustee for her, and requiring that he " shall give bond, with surety, conditioned that he will account and pay over to the said Mary," [complainant,] "and to no one else, all such sums of money as he may receive as trustee aforesaid, (such bond to be in double the value of the personal estate, and double the annual income of the real estate,) and that he will faithfully perform such order and decree as the court may make touching the said trust estate"—the legal title is vested in the trustee until the termination of the life-estate, and is not devolved upon the *cestui que trust* by the death of the trustee before that time. Witter v. Dudley.......................................... 135

See, also, CHANCERY, 17–23.

WAYS.

1. *Right of way appurtenant, and its incidents.*—A right of way, created by express grant in a devise, is appurtenant to the land devised, and passes by a conveyance of the land to a purchaser from the devisee, without express mention of the appurtenances; it is also a charge upon the servient lands, which attaches to them in the hands of a purchaser from the person to whom they were devised; and it is not terminated, or impaired, by the fact that the owner afterwards acquires from a third person mere permission, revocable at any time, to pass over other lands so as to reach his own.—Lide v. Hadley 627

See, also, CHANCERY, 26–27.

WILLS.

1. *What is sufficient signing of will.*—Under the statute of this State, (Code, § 1611,) the testator's name may be signed for him by another person in his presence, and by his direction; and such signing may be made for him by one of the subscribing witnesses to the will.—Riley v. Riley................................. 496

2. *What is sufficient attestation.*—But one of the subscribing witnesses cannot sign the name of another subscribing witness, when the latter is able to write, and does not physically participate in the act of signing.......................................... 496

3. *What law governs revocation of will.*—The question whether a

WILLS—CONTINUED.

will, executed in 1851, is impliedly revoked by a sale and conveyance of the land devised by it in 1856, must be determined by the provisions of the Code of 1853.—Welsh v. Pounders... 668

4. *What constitutes implied revocation of will*—Under the Code, (§1602,) a sale and conveyance of land by the testator, after the execution of his will, does not operate as a revocation of a devise of the land, when the purchase-money is unpaid at the time of his death, "unless it appears by the contract, or some other instrument in writing, to be intended as a revocation." .......................................................................... 668

WITNESS.

1. *Competency of defendant in execution as witness for plaintiff.* Under the Code, (§ 2302,) the defendant in execution is a competent witness for the plaintiff, on a trial of the right of property.—Durden v. McWilliams............................... 345

2. *Competency of vendor as witness for purchaser.*—In an action of trespass against a sheriff, for seizing and selling plaintiff's property under execution against his vendor, a judgment for or against the plaintiff would not be admissible evidence for or against his vendor, in another action; consequently, under section 2302 of the Code, his vendor is a competent witness for the plaintiff.—Sawyer v. Ware.............................. 675

3. *Competency of transferror as witness for transferree.*—Neither section 2290 of the Code, (which declares the transferror of any contract not a competent witness for his transferree, "to prove the cause of action,") nor the analogous rule settled by several decisions of this court prior to the Code, applies to a case in which the vendor of a manufactured article is offered as a witness for the purchaser, in an action of trespass by the latter, against the sheriff, for seizing and selling the article under execution against the vendor................................... 675

4. *Competency of stockholder as witness for private corporation.*—A stockholder in a railroad company is not a competent witness for the corporation.—Ala. & Miss. Rivers Railroad Company v. Sanford & Reid....................................... 703

5. *Cross-examination of witness.*—If a witness betrays bias, partiality, or corruption, the appellate court will lay down no rule as to the questions which may be asked him on cross-examination: "that must be, in a great degree, left to the discretion of the presiding judge."—*In re* Carmichael....................... 514

See, also, EVIDENCE, 41–45.

WRIT.

1. *Ca. sa.*—A writ of *ca. sa.* is not confined in its operation to the county of the defendant's residence; nor is it necessary that the clerk endorse on it that the sheriff hold the defendant to bail in double the sum sworn to be due.—*Ex parte* Cleveland...... 306